*406 OPINION OF THE COURT
Anthony J. Fiorella, Jr., J.
Petitioner moves by notice of motion seeking to strike respondent’s second and third affirmative defenses upon the ground that respondent is no longer entitled to a preferential rent. Respondent cross-moves for an order seeking summary judgment as to the second affirmative defense and dismissing the petition on the grounds that it asserts an illegal and improper rent. The motions are consolidated and decided as follows.
Essential Facts
Petitioner contends that it is no longer obligated to continue respondent’s preferential rent.
In October 1992 respondent executed a one-year lease with the petitioner. Attached to the original lease is a preferential rent rider which reads in pertinent part, “The parties to this lease agree and acknowledge that the tenant will be charged, during the terms of tenant’s occupancy, a preferential rent. The preferential rent is personal to the tenant named in the lease only and will not inure to the benefit of the Tenant’s successor or assigns.” (Emphasis added.) It is further acknowledged that the October and November 2003 rents were accepted and cashed by the landlord at the preferential rate. From the inception of the lease to the present the preferential rent rider remained in full force and effect.
In September 2003, the landlord offered the tenant a renewal lease which, for the first time in the tenancy, calculated the renewal increase based on the legal regulated rent as opposed to the preferential rent. In doing so, the landlord relied on an amendment to the Rent Stabilization Code (9 NYCRR) regarding preferential rents. The proposed increase would bring the tenant’s rent from $946 per month to $1,385 per month. The tenant disputed the applicability of the new law and refused to sign the renewal lease because the rent charged was improper. The landlord then rejected the tenant’s tender of rent, purported to “deem” the lease renewed at the higher amount, and brought this nonpayment proceeding.
Applicable Law
Laws of 2003 (ch 82, §§ 3, 6) amended the Emergency Tenant Protection Act (L 1974, ch 576, § 4, as amended [ETPA]) and the Rent Stabilization Law of 1969 (Administrative Code of City of NY § 26-501 et seq.) to provide that
*407 “where the amount of rent charged to and paid by the tenant is less than the legal regulated rent for the housing accommodation, the amount of rent for such housing accommodation which may be charged upon renewal or upon vacancy thereof may, at the option of the owner, be based upon such previously established legal regulated rent, as adjusted by the most recent applicable guidelines increases and other increases authorized by law ...” (McKinney’s Uncons Laws of NY § 8630 [a-2] [ETPA § 10 (a-2)]; Administrative Code § 26-511 [c] [14] [emphasis added]).
This amendment codified the holding of Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal (283 AD2d 284 [1st Dept 2001]), in which the Court rejected the Division of Housing and Community Renewal’s (DHCR) position that a preferential rent, once granted, becomes the base rent for the entire term of the tenancy, on which all future rent increases are calculated. The DHCR had relied for its position on Rent Stabilization Code (9 NYCRR) § 2521.2 (b), which then provided, “Where the legal regulated rent is established and a rent lower than the legal regulated rent is charged and paid by the tenant, upon vacancy of such tenant, the legal regulated rent previously established plus the most recent applicable guidelines increases . . . may be charged new tenant.” (Emphasis added.)
In Missionary Sisters, the lease specifically limited the rent concession to the term of the lease. The Court held (at 286) that the above-cited section of the Code did not “dictate the exclusive point at which the legal regulated rent can be charged if a concession has been granted.” Relying on Matter of Century Operating Corp. v Popolizio (60 NY2d 483 [1983]), the Court instead held that the language of the lease, limiting the rent concession to the particular lease term for the specific reason stated, controlled over the agency’s interpretation of the regulation.
The DHCR’s rigid rule on preferential rents had its genesis in the “Collingwood Rule,” which held that if a tenant paid a rent which was lower than the legal rent, that lower rent became the base rent for all future increases. (Collingwood Estates v Gribitz, NYLJ, Apr. 24, 1975, at 17, col 6 [Sup Ct, NY County].) Apparently, the Conciliation and Appeals Board, the predecessor agency to the DHCR, applied the Collingwood Rule rigidly, prohibited the owner from going back to the legal regulated *408 rent even after the tenant vacated. {See, Warren A. Estis and Jeffrey Turkel, Rent Regulations, Eight-Year Extension, NYLJ, July 2, 2003, at 5, col 2.) The above-cited section 2521.2 (b) of the Code, on which the DHCR relied in Missionary Sisters, permitting the restoration of the legal regulated rent upon vacancy, was a 1987 amendment intended to ameliorate the Cok lingwood Rule.
Chapter 82 of the Laws of 2003 “roughly codifies” Missionary Sisters. {Id.) It did not alter the terms of the lease at issue here. In this case, the lease rider states, unequivocally, that “the tenant will be charged, during the terms of tenant’s occupancy, a preferential rent.” (Emphasis added.) The terms of the new law do not even purport to apply to this circumstance. (Aijaz v Hillside Place, LLC, 3 Misc 3d 754 [2004].)
In Aijaz, the tenant sued for a rent overcharge based on prior lease renewals that were calculated on the legal rent rather than preferential rent. The court dismissed the landlord’s affirmative defense that chapter 82 of the Laws of 2003 permitted the landlord to abandon the preferential rent in a lease renewal, in favor of the legal regulated rent holding that the law did not apply to a preferential rent that was given for consideration and contracted for the entire duration of the tenancy.
Clearly, with the abrogation of the Collingwood Rule in Missionary Sisters and chapter 82 of the Laws of 2003, when a lease specifically limits the rent concession to the term of the lease, the landlord may charge the legal regulated rent, with any increases, upon renewal of the lease. Whether that is the case if the lease is silent on the term of the preference is an issue not addressed here, since here the lease specifically grants the preference for the entire term of the tenant’s occupancy.
Here, the application of chapter 82 to the tenant’s lease would substantially and severely impair the contract by depriving the tenant of the benefit of the bargain on the most central term of any lease — the amount of rent to be paid. The tenant, in entering the lease, relied on the promise of a preferential rent for the duration of the tenancy, and was entitled to and did order his personal and business affairs according to his need for an affordable apartment with reasonably stable and predictable rent increases. (See 19th St. Assoc. v State of New York, 79 NY2d 434, 443 [1992].)
Laws regulating landlord-tenant relations, particularly to the extent that they limit the amount of rent a landlord may charge, have long been upheld as valid exercises of the state’s police *409 power. (See, generally, Dawson v Higgins, 197 AD2d 127 [1st Dept 1994], appeal dismissed 83 NY2d 996 [1994], cert denied 513 US 1077 [1995].) The Emergency Tenant Protection Act and the Rent Stabilization Law and Code were enacted in response to housing shortages that constituted, and continue to constitute, a serious public emergency. (197 AD2d at 133; Manocherian v Lenox Hill Hosp., 84 NY2d 385, 388 [1994], cert denied 514 US 1109 [1995].) “The regulation of this field has been maintained ‘to prevent uncertainty, hardship and dislocation,’ and to ‘forestall profiteering, speculation and other disruptive practices.’ ” (Manocherian at 389.)
Permitting landlords to abandon contractual preferential rents, at their sole option, does not in any way advance the underlying purposes of the ETPA and the Rent Stabilization Law and Code, which were designed to prevent uncertainty and hardship, and to forestall profiteering, speculation and other disruptive practices. On the contrary, to permit the landlord to abandon the rent preference mid-tenancy, causing a rent increase 10 times that allowed under the applicable rent guidelines, would defeat the purposes of the ETPA and the Rent Stabilization Law and Code.
Although the tenant’s lease provides, at paragraph 4, that “the rent herein shall be adjusted up or down during the Lease term, including retroactively, to conform to the Rent Guidelines increases,” the preferential rent rider prevails over this clause. “It is a well-established rule of construction that the written or typewritten portions of an agreement represent an express manifestation of the parties’ actual intentions and take precedence over any inconsistent provisions in the printed form.” (Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d 229, 234 [1st Dept 1983].)
It is clear from the above discussion that the wording in the preferential rent rider is controlling and must be enforced according to its terms. The wording contained therein is neither restrictive nor conditional. For better than 10 years the parties acknowledged their intent and respective obligations by complying with the rider agreement. Petitioner’s unilateral change of position predicted in chapter 82 of the Laws of 2003 (supra) is simply lacking in merit. To conclude otherwise would then allow the petitioner to walk away from its contractual obligation without redress.
*410 Conclusion
Accordingly, petitioner’s motion to strike respondent’s second and third affirmative defenses is denied. Respondent’s cross motion for summary judgment on its second affirmative defense is granted. Petitioner is directed to provide respondent with a stabilized renewal lease based upon the preferential rent rider and applicable rent guidelines increase in effect within 30 days from entry of this order. That portion of respondent’s motion seeking dismissal of the instant proceeding is denied without prejudice with leave to renew upon petitioner’s failure to comply with the foregoing.