OPINION OF THE COURT
Peter M. Wendt, J.
*180 Petitioner commenced the instant holdover summary proceeding on or about December 27, 2004. Respondent interposed an answer with nine affirmative defenses and two counterclaims. The subject premises is subject to the Rent Stabilization Law of 1969 (RSL) and Rent Stabilization Code.
Petitioner moves for summary judgment pursuant to CPLR 3212 granting the petition and awarding petitioner possession on the ground that respondent failed to execute the renewal lease for the term commencing November 1, 2004.
Respondent cross-moves for summary judgment dismissing the petition and argues that petitioner did not offer respondent a renewal lease in accordance with applicable law. Respondent argues that she was entitled to a renewal lease at a preferential rent, that the renewal lease offer proffered to respondent improperly eliminated the preferential rent and that respondent was not required to accept such offer. Respondent maintains that respondent was charged a preferential rent under her initial lease, and that the original lease and riders provided that respondent was entitled to renew the lease at the preferential rent. Respondent argues that the Rent Stabilization Law requires that renewal leases be on the same terms and conditions as the original lease. Respondent further argues that, since all the lease renewals were for a rent based on the preferential rent, it was the clear intention of the parties that future rent increases would be based on the preferential rent. Respondent argues that, based on the lease and riders and the prior performance of the parties, respondent is entitled to a renewal lease at the preferential rent. Accordingly respondent argues that the landlord failed to offer the respondent a renewal lease in accordance with the Rent Stabilization Law and Code and the proceeding should be dismissed.
Petitioner responds that the prior lease provisions did not provide that the preferential rent would continue throughout the tenancy. Petitioner additionally argues that the law has recently changed to allow a preferential rent to be terminated and for the landlord to charge the legal regulated rent provided the landlord has complied with certain conditions.
The documents submitted by the parties include a copy of an initial lease commencing July 1, 1991, with a rider which granted the tenant a preferential rent for the term of that lease. The rider provided in pertinent part as follows:
“It is understood between the Tenant and the Landlord that the legal rent for apartment 4E, 257 *181 W 21st STREET, New York, NY is $1,000.00.
“In order to induce the Tenant to enter into this lease the Landlord agrees to accept less than the legal rent for the term of this lease as per this schedule:
“For the term of the lease the monthly rent is reduced to a preferential rent [of] $495 per month.”
It is noted that the lease itself provided that the monthly rent for the apartment is $1,100; however, the rider provided that the monthly legal rent is $1,000.
The lease contained a second rider providing that during the term of the lease the tenant may at no additional cost use apartment 1W and the basement storeroom immediately below for storage purposes.
Also submitted is a lease rider executed December 12, 1992 by respondent and a representative of Wolff Management, which provided:
“as of November 1, 1992
“RIDER LETTER
“This letter is a rider to the lease dated June 25, 1992 [sic] and commencing July 1, 1991 between ANA I. McNeur and 257 West 21st Street Associates.
“It is understood between the Tenant and the Receiver that the legal rent for Apartment 4E, 257 21st Street, New York, New York is $1,100.00.
“For good and valuable consideration [the] Receiver agrees to accept less than the legal rent for the term of this lease which is amended to 11/1/92 to 10/31/93
“For the term of the lease the monthly rent is amended to a preferential rental rent of $750.00 per month.
“This agreement does not preclude any legal rent increases allowed under section I. Rent Stabilization Lease for Apartment House tenants residing in New York City.”
The above paragraphs in the rider are typewritten. A hand printed insertion begins immediately after the above text and is continued with an asterisk at the bottom of the page as follows:
“Provided tenant is not in default, tenant shall be * entitled to renew this lease. Upon renewal, tenant shall acknowledge that the new legal rent is based upon appropriate adjustment of the $1,100 legal *182 rent, but actual rent payable shall be based upon appropriate adjustment of the $750 preferential rent.”
After the above insertion, the typewritten text resumes as follows:
“Tenant has surrendered all claims to all occupancy or any part of premises Apt. 1W and basement mentioned in previous riders.
“Tenant also has deposited the sum of $750.00 as security.
“This lease is a preferential lease only and any assignment or subletting to any party shall cause the rent to revert to the registered rent and be deemed a surrender of the unit.”
The parties also submitted executed lease renewal offer forms renewing the lease for the following periods: November 1, 1993 to October 31, 1995; November 1, 1995 to October 31, 1997; November 1, 1997 to October 31, 1999; November 1, 1999 to October 31, 2001; November 1, 2001 to October 31, 2002; November 1, 2002 to October 31, 2003; and November 1, 2003 to October 31, 2004. With the exception of the first renewal offer, these renewal offers appear to be on forms promulgated by the New York State Division of Housing and Community Renewal (DHCR) and have a DHCR logo at the top. However, all of the forms contain identical language. All of these lease renewal offers recite a legal regulated rent and rent increases for one- or two-year renewal lease options, and additionally provide for a lower “preferred” rent to be charged for a one- or two-year lease. The tenant executed all of these offers at the applicable preferred lower rent.
Significantly, the first lease renewal offer form immediately after the original vacancy lease for the lease commencing November 1, 1993 differs from the succeeding lease renewal offers in that paragraph 7, which is part of the boiler plate in the form with the underlined blank spaces, is completed as follows:
“7. This renewal lease is based on the same terms and conditions as your expiring lease, except that -0- lawful provisions attached and -1- written agreements between owner and tenant attached have been added (indicate in the blank spaces as applicable, the number of additional provisions or written agreements attached).”
The same paragraph 7 appeared in all of the succeeding renewal offer forms; however, the blank spaces in paragraph 7 *183 were not completed in the succeeding offers. These spaces were left blank.
A preferential rent is a rent which a landlord agrees to charge which is lower than the legal regulated rent the landlord could otherwise lawfully collect under the Rent Stabilization Law. Prior to June 20, 2003, where a landlord was charging a preferential rent the landlord could not raise the rent to the full legal regulated rent in lease renewals for that tenant but would have to wait until a vacancy and a new tenant to collect the full legal regulated rent.
In 2003 the Rent Stabilization Law was amended to provide that an owner could raise the preferential rent to the “previously established legal regulated rent” on lease renewal with the same tenant. The amendment, Rent Stabilization Law (Administrative Code of City of NY) § 26-511 (c) (14), provides in pertinent part:
“[W]here the amount of rent charged to and paid by the tenant is less than the legal regulated rent for the housing accommodation, the amount of rent for such housing accommodation which may be charged upon renewal or upon vacancy thereof may, at the option of the owner, be based upon such previously established legal regulated rent, as adjusted by the most recent applicable guidelines increases and any other increases authorized by law.”
The courts have made an exception to the new provision in RSL § 26-511 (c) (14) authorizing the landlord to raise the preferential rent to the full legal regulated rent on lease renewal. Accordingly, the courts have held that where the original or a prior lease contains a provision wherein the parties agree that the tenant is entitled to renewal leases at the preferential rent for the full length of the tenancy, RSL § 26-511 (c) (14) does not negate such a lease provision. Thus, in Aijaz v Hillside Place, LLC (8 Misc 3d 73 [App Term, 2d Dept 2005], modfg 3 Misc 3d 754 [Civ Ct, Queens County 2004, Butler, J.]), the court held that the 2003 amendment permits owners to discontinue a preferential rent upon a renewal lease, but that the amendment does not preclude the landlord and tenant from agreeing in a lease or stipulation to a rent preference that would endure beyond the term of the lease into renewal periods, or for the life of the tenancy. Similarly, in 448 W. 54th St. Corp. v Doig-Marx (5 Misc 3d 405 [Civ Ct, NY County 2004, Fiorella, J.]), the court held that the 2003 amendment *184 does not prevent the parties from contractually agreeing that the preferential rent will continue during the term of the tenancy, and that such a contractual provision will be given effect. These cases cited Matter of Century Operating Corp. v Popolizio (60 NY2d 483 [1983]) and Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal (283 AD2d 284 [1st Dept 2001]) wherein the courts held that specific lease provisions limiting rent concessions or preferential rents to the term of the lease took precedence over the rent stabilization provisions then in effect requiring that renewal leases be based on the preferential rent reserved in the prior lease. Thus, both before and after the 2003 amendment, the courts held that specific lease terms take precedence over the more general “default” rent stabilization provisions governing renewal lease terms and preferential rents.
In the case at bar, however, the initial lease commencing July 1, 1991 and riders did not grant the tenant a preferential rate for the entire term of the tenancy. The lease and riders provide that the landlord or receiver agrees to a preferential rent for “the term of this lease.” The rider executed in December 1992 provides that “the tenant shall be entitled to renew this lease” based on the preferential rate. The lease and riders, at most, only impliedly provided that the tenant would be entitled to a preferential rate for one renewal lease.
The renewal offers (with the possible exception of the first offer commencing November 1, 1993) do not include the provision entitling the tenant to one renewal lease at the preferential rent rate. The first renewal offer commencing November 1, 1993 specifically provides in paragraph 7 that the renewal lease shall be on the same terms and conditions as the expiring lease except that one written agreement between the owner and tenant had been added indicating that the parties agreed to the addition of the December 1992 rider agreement. However, in all of the subsequent renewal offers commencing November 1, 1995 and thereafter, paragraph 7 is not filled in, indicating that the December 1992 rider agreement was not included in the subsequent renewal leases. Here, there is no lease provision specifically granting a preferential rent for the life of the tenancy or beyond the November 1, 1995 renewal lease. Accordingly, the 2003 amendment (RSL § 26-511 [c] [14]) governs and the landlord is entitled to charge a previously established legal rent in the lease commencing November 1, 2004.
The 2003 amendment provided that owners are not required to continue a preferential rent contained in a lease in subsequent *185 renewal leases with the same tenant. Thus, the 2003 amendment provides that for lease provisions granting preferential rents, there is an exception to the requirement of Rent Stabilization Code (9 NYCRR) § 2523.5 (a) that renewal leases be on the same terms and conditions as the vacancy lease. Accordingly, a lease provision granting a preferential rent for one renewal lease is not required to be carried forward in subsequent renewal leases for the term of the tenancy.
While recent case law holds that RSL § 26-511 (c) (14) does not preclude parties from contractually agreeing to continue a preferential rent for the entire term of the tenancy, here, there was no such lease provision. Respondent’s initial lease and riders only provided that the tenant was entitled to the preferential rent rate for one renewal lease, not for the entire term of her tenancy.
Here, petitioner has satisfied the prerequisite requirement of RSL § 26-511 (c) (14) where the previous lease charged a preferential rent, that in order for the owner to charge the legal regulated rent in a renewal lease, the legal rent must be previously established. In order for the legal rent to be previously established both the preferential rent and the legal rent must be specifically set forth in the prior leases back to the base date. DHCR Fact Sheet 40 provides in pertinent part:
“Chapter 82 does impose a condition on an owner’s right to terminate a preferential rent. Both the legal regulated rent and the preferential rent must have been established, that is, specifically provided for in the lease agreement/lease renewals, subject to DH-CR’s review (i.e. within four years from time a complaint is filed with DHCR). Registration with DHCR of the preferential rent by itself will not result in establishing the higher legal regulated rent for future usage.”
Under the Rent Stabilization Law and Code, the legal regulated rent is the rent charged four years prior to the filing of an overcharge complaint or action or interposition of an answer. (78/79 York Assoc. v Rand, 180 Misc 2d 316 [App Term, 1st Dept 1999]; CPLR 213-a; Rent Stabilization Code [9 NYCRR] § 2520.6 [e], [¶] [1].)
In the case at bar, all of the leases from the inception of the tenancy specifically set forth both the legal regulated rent and the lower preferential rent. Thus, the requirement of RSL § 26-511 (c) (14) that the legal regulated rent must be previously *186 established is met. The landlord was entitled to charge the previously established legal rent with authorized increases in the renewal lease commencing November 1, 2004.
Accordingly, the petitioner’s motion for summary judgment is granted to the extent that the respondent’s eighth affirmative defense that the premises are subject to the Rent Stabilization Law and that the petitioner has not offered a proper renewal lease as required and respondent’s tenancy was not terminated properly is stricken. Respondent’s cross motion for summary judgment based on petitioner’s failure to serve a proper renewal lease and for attorney’s fees is denied.