OPINION OF THE COURT
Kaye, J.
In December, 1965, while the Lincoln Towers complex in Manhattan was still incomplete, Maurice Rosenberg signed a three-year lease for an apartment there. His lease included a “modification-of-lease rider” containing a two-month rent concession which he received at the outset of his tenancy. Several lease renewals later, Rosenberg complained to the Conciliation and Appeals Board (CAB), of which respondent is chairman, that the two-month rent concession should, by operation of the Rent Stabilization Law, have carried forward to his subsequent renewal leases and because this was not done he had been overcharged. The CAB ruled in his favor. In an article 78 proceeding brought by appellant, Century Operating Corporation, managing agent of Lincoln Towers, Special Term upheld the CAB determination and the Appellate Division affirmed. Because the CAB’s determination was based on a construction of the rider that was without rational basis, we now reverse.
The rider in issue stated that the landlord would not be liable for failure to give possession of the apartment at the commencement of the specified term if building construction had not yet been completed, and further provided: “Tenant shall not be required to pay rent for the two months period commencing on the date on which possession of the apartment is given or the apartment is available for occupancy by Tenant. The installment of rent paid by Tenant upon the execution of the Apartment Lease shall be applied, on a prorated basis, first to the rent for the remainder of the calendar month immediately following such two months period and then towards the rent for the next calendar month (the balance of which rent for said next calendar month after such application shall be paid by Tenant on the first day of said next calendar month), or if such two months period expires on the last day of a calen *487 dar month, to the rent for the calendar month which immediately follows such two months period.”
Upon passage of the New York City Rent Stabilization Law in May, 1969 (Administrative Code of City of New York, § YY51-1.0 et seq.), Rosenberg’s apartment became subject to rent stabilization. Under subdivision b of section YY51-4.0 of the Rent Stabilization Law, all future rent increases were to be computed on the basis of a “base rent” charged on May 31,1968: here $313. Section 60 of the Code of the Rent Stabilization Association of New York City, Inc. (the Rent Stabilization Code), further required that an owner offer a stabilized tenant a renewal lease on the same terms as the expiring lease, except for the authorized rent increase.
Rosenberg renewed his lease with appellant’s predecessor for three successive three-year terms, in February, 1969, 1972 and 1975. On each occasion, the rent in the renewal lease was calculated on the basis of the $313 base rent allowed with increases. Also on each occasion, the renewal lease did not contain the modification-of-lease rider and Rosenberg was not allowed two months’ free rent. Rosenberg executed each renewal without protest.
In September, 1976, appellant became managing agent for the Lincoln Towers complex. Shortly after Rosenberg executed his fourth renewal lease for the period February, 1978 to January, 1981, he submitted an overcharge complaint to the CAB. Rosenberg alleged that the proper base rent was not $313, but rather $313 multiplied by 34/36 (to account for the actual number of months in which rent was paid in the original lease), or $295.61, and he averred that, as the rent increases in his renewal leases were all based on the $313 base rent, he had been overcharged. Rosenberg sought both back rent and future adjustments. Appellant responded by contending that the free-rent period in the original lease was a one-time concession intended to attract tenants to the then-unoccupied apartment complex, and therefore could not be employed to reduce Rosenberg’s rent.
In October, 1978 the CAB ruled that appellant had violated section 60 of the Rent Stabilization Code by not including a two-month concession in each renewal lease, *488 citing Matter of La Barbera v Housing & Dev. Auth. (44 AD2d 835), and awarded Rosenberg a refund of past rentals paid to appellant for the “free months.” Two CAB members dissented from the reasoning of the majority, and one additional member from the result, on the ground that Rosenberg was estopped from asserting his claims by reason of laches.
Appellant then commenced this article 78 proceeding in May, 1980 seeking to set aside the CAB determination as “arbitrary, capricious and erroneous as a matter of law.” In September, 1981, Special Term dismissed appellant’s petition on the ground that the CAB determination was rationally based and not arbitrary or capricious. The Appellate Division, with one dissent, affirmed in November, 1982, concluding that “although we might have reached a different conclusion, this court may not substitute its judgment for that of the board.” (90 AD2d, p 732.)
Unquestionably, the modification-of-lease rider, as a condition of the original lease, should by virtue of section 60 of the Rent Stabilization Code be deemed incorporated in Rosenberg’s renewal leases. The issue presented is whether that rider, once incorporated, can be construed to require two months’ free rent on the occasion of each renewal.
The CAB’s interpretation of the modification-of-lease rider is arbitrary and capricious in that it is without sound basis in reason, and in disregard of the terms of the contract and the facts in this action. (Matter of Pell v Board of Educ., 34 NY2d 222, 231.) The explicit terms of the rider, including that the tenant “shall not be required to pay rent for the two months period commencing on the date on which possession of the apartment is given or the apartment is available for occupancy”, limit the rent concession to the commencement of the original vacancy lease. The terms “possession * * * is given” and “available for occupancy” have no rational relation to a renewal lease, where the tenant already is in possession and occupancy of the apartment. The rider must be read “in the light of the circumstances existing at its making” (Becker v Frasse & Co., 255 NY 10, 14), and examination of the language of the rider as a whole confirms that the two-month rent *489 concession is tied to the other rider provisions concerning the possibility that building construction would not be complete by the beginning of the specified term. The provision for proration of the free rent in case the period would not begin on the first day of a calendar month applies peculiarly to the initial vacancy lease, when the building was not yet available for occupancy, and would have no meaning in the context of renewal leases.
Respondent suggests that the parties’ intent, and therefore principles of contract construction, are irrelevant in cases of leases subject to rent stabilization, citing Matter of East 56th Plaza v New York City Conciliation & Appeals Bd. (56 NY2d 544). In Matter of East 56th Plaza, we held that, since section 60 of the Rent Stabilization Code requires that terms and conditions of expiring leases be incorporated in renewal leases, the fact that a landlord may not have intended to incorporate a term or condition is immaterial. Here it is undisputed that the modifieation-oflease rider was incorporated in Rosenberg’s renewal lease. But on the question of the meaning to be given to a contractual term or condition once incorporated in a renewal lease, the parties’ intent is, as always, a touchstone of contract construction.
Matter of La Barbera v Housing & Dev. Auth. (44 AD2d 835, supra), cited by the CAB in support of its determination and by respondent for the proposition that rent concessions in original leases are perforce carried over into renewal leases by the Rent Stabilization Code, does not support the CAB’s result here. In that case, a lease term providing that the tenant would pay no rent “for January of each year” was, once incorporated in a renewal lease by virtue of section 60 of the Rent Stabilization Code, properly construed to provide a rent concession in January for years under renewal leases as well. The concession under consideration, fixed as it was to the giving of possession and assumption of occupancy in the uncertainty of building completion, cannot be construed to carry forward to renewal leases.
The CAB’s determination, therefore, is without rational basis and must be annulled. (Matter of Swalbach v State Liq. Auth., 7 NY2d 518, 522.) Accordingly, the order of the *490 Appellate Division should be reversed, with costs, and appellant’s petition to set aside the CAB’s determination should be granted.