■ RICHARD DWORKIN, Respondent, v 417 EAST REALTY ASSOCIATES, Appellant.—Judgment, Supreme Court, New York County (Elliot J. Wilk, J.), entered on January 24, 1984, affirmed for the reasons stated by Elliott Wilk, J. Respondent shall recover of appellant $75 costs and disbursements of this appeal. Concur—Sandler, Asch, Fein and Rosenberger, JJ.

Kupferman, J. P., dissents in a memorandum as follows: I would modify the judgment to declare that the premises are not subject to the Rent Stabilization Law.

While there are other issues in this matter, such as the question of harassment and primary residence, as to which I concur with the majority, I believe the determining factor should be that the premises involved are not such as are provided for under the legislative finding of section 2 of the Laws of 1974 (ch 576, § 4), being the Emergency Tenant Protection Act of 1974.

The plaintiff resides in a multiple-story penthouse with swimming pool at 417 East 57th Street. The history of the building is of moment, because it leads to my conclusion. It was constructed in 1974 by Christopher Boomis, who was financially overextended and defaulted on the mortgage. The mortgagee bank instituted a foreclosure proceeding and arranged for a buyer. To forestall resistance to foreclosure by Mr. Boomis, an interest in the penthouse, nominally a lease, was arranged so that a corporation would purchase it from Mr. Boomis.

Prior to the purchase, Mr. Boomis was given the right to assign or sublet with a specific provision, as follows: "Tenant shall have the absolute right to renew the within lease from time to time for successive periods of at least one year duration each *but in no event for any period extending beyond August 31, 1984* by giving written notice of his election to do so to the landlord at least 30 days prior to the expiration of the then current lease period" (emphasis added).

The corporation which purchased Mr. Boomis' existing interest assigned what it had to Arthur Richards, Ltd. The plaintiff here, who was the president of the latter company, then succeeded to its interest.

Renewal leases were executed through the 10-year period involved, and the rent charged in accordance with the provision of the Boomis lease was as "permitted by the Rent Stabilization Association under the 421 tax abatement regulations then in effect". It appears that the reference to the Rent Stabilization Law was only for the purpose of calculating the rent and not for applying the said law to the interest involved.

The arrangement here must be considered in light of the circumstances existing at its inception. *(See, Matter of Century Operating Corp. v Popolizio,* 60 NY2d 483, 488.)

The parties were using the form of a "lease" but were actually providing for and selling a slice of a building for less

than a life estate. The history of the Emergency Tenant Protection Act does not indicate an intent to cover this type of situation. *(Cf. La Guardia v Cavanaugh,* 53 NY2d 67.) The so-called tenant must be subject to the specific term of the arrangement which had a definite cutoff. *(Cf. Matter of David v New York City Conciliation & Appeals Bd.,* 59 NY2d 714, 716.)

For the Rent Stabilization Law to apply here is to extend tenant protection to the equivalent of a landlord.