(May 22, 2001)

■ In the Matter of MISSIONARY SISTERS OF THE SACRED HEART, ILL., Appellant, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Respondent, et al., Respondent. [724 NYS2d 742] —Judgment, Supreme Court, New York County (Sheila Abdus-Salaam, J.), entered April 10, 2000, which dismissed this CPLR article 78 proceeding to annul the determination of respondent New York State Division of Housing and Community Renewal (DHCR), dated July 1, 1998, denying petitioner owner's application for an order directing that the rent in a renewal lease be based upon the legal regulated rent rather than the preferential rent actually paid by the tenant, reversed, on the law, without costs, the petition granted and the matter remanded to the DHCR for further proceedings in accordance herewith. Appeal from order, same court and Justice, entered on or about April 10, 2000, which directed entry of the aforesaid judgment, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

Petitioner Missionary Sisters of the Sacred Heart, Ill. (Missionary Sisters or landlord) is the owner of the residential building designated as 222 East 19th Street, New York, New York. Respondent Alessandro Croseri (tenant) is the rent-stabilized tenant of Apartment 12D.

On April 28, 1994, the Missionary Sisters and Croseri entered into a lease for a two-year term which commenced on May 1, 1994. The lease provided that the monthly rent for the apartment was $1,448.14, but that Croseri was to pay a preferential rent of $1,379.77. The parties also executed a "Preferen-

tial Rent Rider" which provided, in pertinent part: "THE PAR-
TIES TO THIS LEASE AGREE AND ACKNOWLEDGE *THAT THE TENANT
WILL BE CHARGED, DURING THE TERM OF MAY 1, 1994 THRU APRIL 31,
1996 [SIC] A PREFERENTIAL RENT OF $1,379.77 PER MONTH* * * * IT IS
ACKNOWLEDGED THAT THIS PREFERENCE IS GRANTED TO THE TEN-
ANT ALESSANDRO CROSERI *BECAUSE OF THE PRESENT ECONOMICALLY
DEPRESSED MARKET.*" (Emphasis added.)

On or about March 25, 1996, the Missionary Sisters and Cro-
seri entered into a renewal lease for a term of one year com-
mencing on May 1, 1996. The renewal noted that the legal rent
was now $1,477.10, but that a preferential rate of $1,408.37
would be charged. In addition, the parties again executed a
"Preferential Rent Rider" which, for the purposes of this ap-
peal, was identical to the first rider.

Prior to the expiration of the first renewal lease, the Mis-
sionary Sisters tendered a second renewal lease at the legal
regulated rent without the rent concession. Croseri refused to
execute the renewal without the concession and, as a result,
the Missionary Sisters commenced an administrative proceed-
ing before the DHCR to determine whether Croseri could be
charged the legal regulated rent. The DHCR records indicate
that Croseri also filed a complaint with the agency requesting
a determination as to what constituted the appropriate rent.

By order dated September 26, 1997, the DHCR Rent Admin-
istrator denied the Missionary Sisters' application on the
ground that "renewal leases are based on preferential rent
until the tenant moves out." The Missionary Sisters thereafter
filed a petition for administrative review, which was denied by
decision and order dated July 1, 1998. In his decision, the Dep-
uty Commissioner initially cited section 2521.2 (b)* of the Rent
Stabilization Code (9 NYCRR) and then found, based thereon,
that "[o]nly after the tenant that is charged a rent lower than
the legal regulated rent vacates, may the legal regulated rent
be used as a basis for adjustments."

The Missionary Sisters subsequently commenced the within
article 78 proceeding by Notice of Petition and Petition dated
July 1, 1999 challenging the DHCR's final determination. The

---

* The decision actually misstates the section relied upon as section
2521.3 (b), which addresses a building's classification as a hotel vis-à-vis
maid and linen service.

IAS court, by decision dated January 6, 2000, denied the petition and held, *inter alia*: "While this court might have reached a different conclusion than did the DHCR regarding whether the lower rent was to be limited to each lease period, and not continued for this tenant indefinitely, respondent's view of the lease provisions in the context of the Rent Stabilization Law and the [R]ent Stabilization Code is 'determinatively persuasive'." (Citation omitted.) We disagree.

The DHCR's final determination, which denied the Missionary Sisters' appeal, turned solely on the agency's reading and application of section 2521.2 (b) of the Rent Stabilization Code (RSC), which provides: "Where the legal regulated rent is established and a rent lower than the legal regulated rent is charged and paid by the tenant, upon vacancy of such tenant, the legal regulated rent previously established plus the most recent applicable guidelines increases, plus such other rent increases as are authorized pursuant to section 2522.4 of this Title [Adjustment of legal regulated rent], may be charged a new tenant."

It is settled that where the interpretation of a statute involves a specialized " 'knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom,' the courts should defer to the administrative agency's interpretation unless irrational or unreasonable" (*Matter of Dworman v New York State Div. of Hous. & Community Renewal*, 94 NY2d 359, 371, quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459). In contrast, where the question is one of pure statutory interpretation and analysis, there is little basis to rely on the special competence or expertise of the administrative agency and its interpretive regulations are to be accorded much less weight (*Matter of Dworman v New York State Div. of Hous. & Community Renewal, supra*, at 371; *Kurcsics v Merchants Mut. Ins. Co., supra*, at 459; *Matter of Eastern Pork Prods. Co. v New York State Div. of Hous. & Community Renewal*, 187 AD2d 320, 323).

In our view, as opposed to the interpretation set forth by the DHCR, the above-cited provision does not dictate the exclusive point at which the legal regulated rent can be charged if a concession has been granted, and there is nothing in its terms which indicates such a restriction was intended. Rather, section 2521.2 (b) provides guidance in those situations where no written agreement controls and/or where the rent concession is open-ended or where the tenant, and possibly the landlord also, is unaware the rent being charged is not the maximum

allowable. It was not intended, however, to obviate the terms of a lease agreement where both the landlord and the tenant are aware that the rent charged could, legally, be higher, but agree, for a limited period, under a specific set of circumstances, to allow the tenant to pay less.

The Legislature initially enacted laws providing for rent control and, later, rent stabilization in response to a critical housing shortage following the Second World War (*Rent Stabilization Assn. v Higgins*, 83 NY2d 156, 164-165, *cert denied* 512 US 1213). The Rent Stabilization Law, enacted in 1969, was designed to encourage future housing construction by allowing owners to charge reasonable rent increases, as well as to prevent the exaction of "unjust, unreasonable and oppressive rents" and to "forestall profiteering, speculation and other disruptive practices" in the housing market (*see*, Administrative Code of City of NY § 26-501; *Matter of 300 W. 49th St. Assocs. v New York State Div. of Hous. & Community Renewal*, 212 AD2d 250, 254). Section 2520.13 of the Rent Stabilization Code provides, in pertinent part, that "[a]n agreement by the tenant to waive the benefit of any provision of the RSL or this Code is void."

Surely, requiring a tenant to pay less than the full legal rent, no matter for how short a term, cannot possibly violate any public policy prohibiting the exaction of "unjust, unreasonable and oppressive rents," especially where the tenant is aware of the concession and the limitation on its duration. Moreover, requiring the tenant to pay a temporarily discounted rent cannot be said to constitute a waiver of a benefit provided by the Code. To hold, as did the DHCR, that any and all agreed upon limited concessions are, in fact, not limited at all but survive to the termination of the tenancy will serve no other purpose but to foreclose any informed landlord from providing such a limited preference, whether such preference inures solely to the benefit of the tenant, or to both the tenant and landlord.

The DHCR, in an apparent attempt to buttress its rulings, now argues on appeal, *inter alia*, that the aforecited cases addressing statutory interpretation do not apply because "[t]he facts of the case at bar reveal that no issue of legislative intent of a statute exists. *The issue is the interpretation of the terms of a lease between the parties*" (emphasis added), and that the mutual intent of the parties controls. The DHCR also places heavy reliance on a theory it sets forth as the "*Collingwood* principle." These issues, of course, were never raised, much less addressed, in the DHCR's final determination.

ꞔudicial review of the propriety of any administrative determination is limited to the grounds invoked by the agency in making its determination (*Matter of Montauk Improvement v Proccacino*, 41 NY2d 913; *Matter of 72A Realty Assocs. v New York City Envtl. Control Bd.*, 275 AD2d 284). The Court of Appeals has further opined that: " '[a] reviewing court, in dealing with a determination * * * which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. *If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.*' " (*Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.*, 77 NY2d 753, 758 [emphasis added], quoting *Matter of Montauk Improvement, supra.*)

In our view, having reached the conclusion that the Rent Stabilization Code provision which formed the sole basis for the DHCR determination has no application to the facts herein, the analysis should end. Notwithstanding the foregoing, we do not agree that an ambiguity exists in the rider.

It is well established that the interpretation of the provisions of a lease is governed by the same rules of construction applicable to other agreements (*Star Nissan v Frishwasser*, 253 AD2d 491, 492; *New York Overnight Partners v Gordon*, 217 AD2d 20, 24, *affd* 88 NY2d 716; *Backer Mgt. Corp. v Acme Quilting Co.*, 46 NY2d 211, 217). Where the intent of the parties is clear and unambiguous from the language employed on the face of the contract, the courts may not resort to extrinsic evidence (*W.W.W. Assocs. v Giancontieri*, 77 NY2d 157, 162; *Doherty v New York Tel. Co.*, 202 AD2d 627, 628) and the interpretation of the agreement is a matter of law solely reserved for the court (*W.W.W. Assocs. v Giancontieri, supra*, at 162; *New York Overnight Partners v Gordon, supra*, at 24-25; *Star Nissan v Frishwasser, supra*, at 492). Further, when interpreting a writing, the court should "adopt an interpretation which gives meaning to every provision of a contract" (*Muzak Corp. v Hotel Taft Corp.*, 1 NY2d 42, 46; *see also, Two Guys v S.F.R. Realty Assocs.*, 63 NY2d 396, 403; *W.W.W. Assocs. v Giancontieri, supra*, at 162).

In this matter, the lease, and the renewal in similar language, as previously noted, provide, *inter alia*: "THE PARTIES TO THIS LEASE AGREE AND ACKNOWLEDGE *THAT THE TENANT WILL BE CHARGED, DURING THE TERM OF MAY 1, 1994 THRU APRIL 31, 1996 [sic] A PREFERENTIAL RENT OF $1,379.77 PER MONTH* * * * IT IS ACKNOWL-EDGED THAT THIS PREFERENCE IS GRANTED TO THE TENANT ALES-

SANDRO CROSERI *BECAUSE OF THE PRESENT ECONOMICALLY DEPRESSED MARKET.*" (Emphasis added.)

Thus, the agreements, by their own terms, set forth the legally allowable rent that could have been charged under the Rent Stabilization Code; the concession, or preferential rent that would be charged; the specific term for which the discounted rent would apply; and the clearly defined reason why the lower rent was offered. There is nothing in either the lease or the renewal that might in any way indicate the concession or preference was indefinite, rather, it was *specifically* tied to economic conditions prevailing at the time the lease was executed, and was to apply for that particular lease term. We perceive of no reading of the leases, or ambiguity in their terms, which might lead the tenant, or the DHCR, to conclude that the preference was to survive recovery after the economically depressed market recovered.

Further, we find the holding of the Court of Appeals in *Matter of Century Operating Corp. v Popolizio* (60 NY2d 483) to be controlling. In *Popolizio*, the building into which the tenant was to move was under construction, and there existed the possibility that the apartment would not be ready at the beginning of the term of the tenancy. To mitigate this possibility, the landlord agreed to waive the rent obligation for the first two months of the lease. The New York City Conciliation and Appeals Board (the CAB), the DHCR's predecessor agency, found that the two-month rent concession should be continued indefinitely in all renewal leases. The Court of Appeals, however, rejected the CAB determination as arbitrary and capricious in that it was "without sound basis in reason, and in disregard of the terms of the contract and the facts in this action." (*Id.* at 488.) In reaching its decision, the Court of Appeals noted that: "[t]he explicit terms of the rider, including that the tenant 'shall not be required to pay rent for the two months period commencing on the date on which possession of the apartment is given or the apartment is available for occupancy', limit the rent concession to the commencement of the original vacancy lease. The terms 'possession * * * is given' and 'available for occupancy' have no rational relation to a renewal lease, where the tenant already is in possession and occupancy of the apartment." (*Id.*)

The Court of Appeals also held that "on the question of the meaning to be given to a contractual term or condition once incorporated in a renewal lease, *the parties' intent is, as always, a touchstone of contract construction.*" (*Id.* at 489 [emphasis added].)

In *Popolizio*, the rent concession was granted because of conditions which existed in the building at the time the lease was executed, i.e., delayed construction, whereas in this matter, the rent concession was granted due to conditions which existed outside the building, i.e., an economically depressed market. In both matters, the tenant was expressly informed of the basis for the rent concession and we find, as did the Court of Appeals in *Popolizio* (at 488), that after an "examination of the language of the rider as a whole," the rent concession in this matter is limited to the particular lease term for the specific reason stated.

Lastly, the DHCR relies upon the *"Collingwood* Rule," which was apparently set forth in *Collingwood Estates v Gribitz* (NYLJ, Apr. 24, 1975, at 17, col 6 [Sup Ct, NY County, Fine, J.]), and which provides that the rent which a tenant pays controls, not what might have been charged, thereby guaranteeing that the tenant will not be responsible for a rent increase greater than the percentage authorized by the New York City Rent Guidelines Board. We find this argument is also unavailing as it ignores, or attempts to circumvent, the holding of the Court of Appeals in *Matter of Century Operating Corp. v Popolizio (supra)*, which indicates that the parties' intent clearly manifested in a written agreement controls in situations such as this. Concur—Nardelli, J. P., Williams and Lerner, JJ.

Ellerin and Rubin, JJ., dissent in a memorandum by Rubin, J., as follows: The tenant, Alessandro Croseri, took occupancy of a rent-stabilized apartment pursuant to a vacancy lease (Rent Stabilization Code [RSC] [9 NYCRR] § 2520.6 [g]) dated April 28, 1994. A rider to the lease, denominated a "Preferential Rate Rider," acknowledges that the legal regulated rent (RSC § 2520.6 [f]) is $1,448.14, but provides that the tenant is being charged a "preferential rent" of $1,379.77 during the term commencing May 1, 1994 and expiring April 31, *[sic]* 1996 due to the "present economically depressed market." A renewal lease (RSC § 2520.6 [h]), executed by the parties for the term May 1, 1996 through April 30, 1997, incorporates a similar rider, providing for a "preferential rent" of $1,408.37.

At the time of the next renewal, the owner tendered a lease without the preferential rent rider, requiring the tenant to pay the "actual rent" without any concession. The tenant commenced an administrative proceeding before respondent Division of Housing and Community Renewal (DHCR), claiming that the renewal rent should be based upon the rent actually paid, even if the legally collectible rent is higher. Thereafter, the landlord filed a request for an administrative determina-

tion that the renewal lease should be predicated upon the legal regulated rent. However, the Rent Administrator issued an administrative order finding, in part, that Rent Stabilization Code § 2521.2 (b) permits the legal regulated rent to be reinstated only after the tenant vacates the premises and a new tenant is offered a vacancy lease. That regulation provides: "Where the legal regulated rent is established and a rent lower than the legal regulated rent is charged and paid by the tenant, upon vacancy of such tenant, the legal regulated rent previously established plus the most recent applicable guidelines increases, plus such other rent increases as are authorized pursuant to section 2522.4 of this Title [Adjustment of legal regulated rent], may be charged a new tenant."

Upon denial of its Petition for Administrative Review (RSC part 2510), the landlord commenced this proceeding pursuant to CPLR article 78 (RSC § 2507.9). Supreme Court dismissed the petition on the ground that, although reasonable minds might differ as to the mandate of Rent Stabilization Code § 2521.2 (b), DHCR's determination is not irrational.

DHCR's interpretation of statutes and regulations subject to its administration is entitled to great deference (*Matter of Salvati v Eimicke*, 72 NY2d 784, 791, *rearg denied* 73 NY2d 995; *Matter of Howard v Wyman*, 28 NY2d 434, 438). That the landlord may not have intended to incorporate the rider into future leases is not dispositive in view of the requirement to provide a renewal lease "on the same terms and conditions as the expired lease" (RSC § 2522.5 [g]; *Matter of Century Operating Corp. v Popolizio*, 60 NY2d 483, 489). As the terms of the rider do not apply "peculiarly to the initial vacancy lease" (*id.*), it cannot be said that the agency's construction of the regulation is "unreasonable or irrational" (*Matter of Salvati v Eimicke, supra,* at 791; *see also, Matter of Gaines v New York State Div. of Hous. & Community Renewal*, 90 NY2d 545, 551), and its determination should therefore be upheld.

Even considering the matter de novo, we would reach the same conclusion. *Matter of Century Operating Corp. v Popolizio (supra)*, relied upon by the landlord and the majority, is factually distinguishable. In that case, a rider to the initial vacancy lease granted a concession of two months' rent "tied to the other rider provisions concerning the possibility that building construction would not be complete by the beginning of the specified term" (*supra,* at 489). As the Court of Appeals noted (at 489), the concession provision "applies peculiarly to the initial vacancy lease, when the building was not yet available for occupancy, and would have no meaning in the context of re-

newal leases." Thus, there is no question that the concession resulted from the landlord's inability to assure the tenant that construction of the premises (Lincoln Towers) would be complete and that the tenant could therefore assume occupancy on the inception date of the lease.

In the instant proceeding, by contrast, the reduced rent is designated "a preferential rent," limited to the tenant and not extending to his successors. It is the owner's position that the lease grants it the option to remove the preferential rent if, in its determination, market conditions are no longer "depressed." The lease does not express the tenant's agreement to this procedure, and nothing in the Rent Stabilization Code grants a landlord the right to make such a unilateral determination.

Accordingly, the judgment should be affirmed.