■ In the Matter of AVJ REALTY CORP., Respondent, v NEW YORK STATE DIVISION OF HOUSING AND COMMUNITY RENEWAL, Appellant, and LISA CARDO, Intervenor-Appellant. [778 NYS2d 12]—

Order, Supreme Court, New York County (William A. Wetzel, J.), entered April 9, 2003, which granted petitioner's CPLR article 78 petition seeking to annul respondent's order and opinion dated September 4, 2002, denying the petition for administrative review of its determination issued November 16, 2001, which directed petitioner to offer a renewal lease to the tenant Lisa Cardo at a rent calculated by applying applicable rent adjustments over the preferred monthly rent of $140, unanimously reversed, on the law, without costs, the petition denied, respondent's September 4, 2002 order and opinion confirmed, and its November 16, 2001 determination reinstated.

Intervenor Lisa Cardo has resided in the subject apartment since her marriage to nonparty William Racolin in 1983. The apartment was first leased to Racolin on June 14, 1977 for a period of two years. Although the rent stated in the lease was $750 per month, Racolin paid only $140 per month. His father, Alexander Racolin, owned the building, along with 30 other buildings in New York. Alexander Racolin died in 1998. William Racolin owns a financial interest in the family's real estate corporation.

Racolin and Cardo lived together in the apartment until February 1994, when Racolin moved out. They were divorced in 1999 and Cardo was awarded the apartment, where she continues to live with the couple's daughter. Until Racolin vacated the apartment, the monthly rent of $140 was paid from the couple's joint checking account. Thereafter, Cardo continued to pay $140 per month, pursuant to the building owner's monthly rent notices to her, and her rent payments were accepted by the owner. However, the owner refused her requests for a renewal lease in her name, rather than Racolin's.

In January 2000, Racolin wrote to Cardo proposing to use his influence in the family business to try to persuade the owner not to raise Cardo's rent immediately by "rescinding the rent concession" but instead to continue the rent of $140 for another six years, or until the daughter turned 21, on condition that Cardo agree to reduce Racolin's monthly child support payments from $1,800 to $1,200. Cardo refused.

Five months later, the owner wrote to Cardo advising that the "concession that has been granted to date for apartment 18A at 56 Seventh Avenue will be discontinued" as of November 1, 2000, and enclosing a renewal lease in her name with the option of renewing for one year at $1,594.92 per month or for two years at $1,625.59 per month.

Cardo filed complaints with the Division of Housing and Community Renewal (DHCR) based on the owner's failure to renew her lease and the rent overcharge. The owner requested an administrative determination as to the legal regulated rent of the subject apartment.

In an order issued November 16, 2001, the DHCR Rent Administrator found that Cardo lived in the apartment as a family member of the lease holder, William Racolin, for at least two years before Racolin moved out, and since then has paid the preferential rent of $140 per month, which the owner has accepted. The Rent Administrator determined that therefore Cardo is eligible for succession rights to the apartment under the Rent Stabilization Code "and shall continuously enjoy the

rights and privileges afforded to her husband William Racolin, including the preferred rent." The order directed the owner to offer a renewal lease "to the subject tenant Lisa Cardo by applying applicable rent adjustments over the preferred rent of $140.00."

The owner filed a petition for administrative review (PAR) of this determination, which the Deputy Commissioner of DHCR denied in an order issued September 4, 2002. The Deputy Commissioner found, inter alia, that the four-year limitation on review of rent history precluded the owner from using the 1983 rent of $1,433.58 as the base rent from which to calculate the legal regulated rent. Rather, since Cardo's complaint was filed on October 31, 2000, the base date for determining the legal rent for the apartment was October 31, 1996, and on that date the rent charged was $140 per month (as it continued to be through 1999).

As to the owner's contention that the preferential rent was personal to Racolin and that he alone was responsible for the rent under the lease, the Deputy Commissioner pointed out that Racolin had not paid any rent on the apartment since February 1994 and that the preferential rent charged had been paid by Cardo, "albeit in her married name."

The Deputy Commissioner found further that the owner did not submit a lease for the four-year period between October 31, 1996 and October 31, 2000 that set forth the preferential rent, but relied on the 1977 lease, which neither specifies any preferential rent or concession nor explains why the owner accepted the lower rent for 24 years. Therefore, even if the 1977 lease were properly reviewed in this proceeding, it would not support the owner's attempt to resume collection of the higher legal regulated rent because it does not satisfy the criteria therefor set forth in *Matter of Missionary Sisters of Sacred Heart v New York State Div. of Hous. & Community Renewal* (283 AD2d 284 [2001]).

Affirming the November 16, 2001 order of the Rent Administrator, the Deputy Commissioner concluded that since Cardo was named as a tenant on a renewal lease offered by the owner, she paid a preferential rent of $140 per month, which the owner accepted, for more than five years, and she continues to occupy the apartment, the owner is obligated to offer Cardo a renewal lease "by applying applicable guideline rent adjustments over the preferred rent of $140.00 per month."

By petition dated October 31, 2002, the owner commenced this article 78 proceeding to set aside, as arbitrary and capricious, DHCR's order denying its PAR. Cardo cross-moved to intervene and, upon intervening, to deny the petition.

The IAS court found that "William Racolin has used his influence with the petitioner to increase his ex-wife's rent and to deny her the benefit of the preferential rent. It is alleged in the papers that he used this as a lever to try to obtain some other financial concessions from her." DHCR's determination "to require the landlord to extend the preferential lease to his tenant-son's ex-wife appears to be a noble effort to grant equitable relief." However, the court stated, DHCR "may *not* seek to accomplish a 'fair' result in this proceeding that takes into consideration the terms of the divorce or other related matters" and "if there is any need for equity on behalf of Ms. Cardo, she can seek an increase in support payments." The court granted the petition, holding that the owner was not obligated to renew the lease at the preferential rent and that DHCR's determination was "erroneous as a matter of law." We reverse.

"Judicial review of the propriety of any administrative determination is limited to the grounds invoked by the agency in making its determination" (*Matter of Missionary Sisters,* 283 AD2d at 288). The reviewing court "must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious" (*Matter of Gilman v New York State Div. of Hous. & Community Renewal,* 99 NY2d 144, 149 [2002]). As indicated, the Deputy Commissioner based his determination that the owner must offer Cardo a renewal lease at a rent calculated by applying applicable adjustments to the preferred rent of $140 per month on the grounds that, pursuant to the four-year rule, the base date for determining the legal rent is October 31, 1996, and that on that date the owner charged and Cardo paid $140 per month. In reviewing this determination, the court did not address DHCR's application of the four-year rule. Indeed, it considered the 1977 lease. Moreover, its conclusion that the owner was not obligated to renew the lease at the preferential rent was based on factual errors as well as misplaced reliance on *Matter of Missionary Sisters (supra).*

In considering the 1977 lease, the court found that it included a rider that provided for a rent of $140 per month, "acknowledged to be less than the permissible regulated rent for the apartment," and that the rider stated that the preferential rent was revocable by the landlord upon any lease renewals and that no extension of the preferential rent should be considered as a waiver. The court concluded that, "[i]n essence, the rider clearly intended to make this concession personal to that tenant, who was the building owner's son." However, the only lease in evidence is the 1977 lease first given to William Racolin, at a stated monthly rent of $750, and it contains no reference to a prefer-

ential rent. Moreover, long after the building owner's son had moved out of the apartment and only Cardo and the couple's daughter lived there, the owner continued to charge the preferential rent of $140 per month.

In support of its conclusion that the preferential rent could be discontinued at any time in the owner's discretion, the court cited *Matter of Century Operating Corp. v Popolizio* (60 NY2d 483 [1983]) and *Matter of Missionary Sisters* (*supra*) with respect to the construction of leases by their ordinary contract terms. In *Missionary Sisters*, this Court found that the agreements between the Missionary Sisters and their tenant, "by their own terms, set forth the legally allowable rent that could have been charged under the Rent Stabilization Code; the concession, or preferential rent that would be charged; the specific term for which the discounted rent would apply; and the clearly defined reason why the lower rent was offered" and that nothing in the leases indicated that the preferential rent was indefinite, "rather, it was *specifically* tied to economic conditions prevailing at the time the lease was executed, and was to apply for that particular lease term" (283 AD2d at 289).

In distinction, there is no reference to a preferential rent in the 1977 lease, notwithstanding the understanding of the parties thereto that the rent would be $140, rather than $750, there is no indication of a specific term for a preferential rent and there is no explanation for the offer of the lower rent. Thus, as the Deputy Commissioner found, even if consideration of the 1977 lease in this proceeding were not precluded by the four-year rule, it would be unavailing because the lease does not meet the requirements of *Missionary Sisters*.

Limiting our review of DHCR's determination to the grounds invoked by DHCR in making the determination (*see Missionary Sisters* at 288), we find that the agency had a rational basis for excluding the 1977 lease from consideration (*see Matter of Reads Dev. Co. v New York State Div. of Hous. & Community Renewal*, 282 AD2d 273 [2001] [four-year rent history review limitation "is to be applied to any action or proceeding in any court or any application, complaint or proceeding before an administrative agency"]), and that its determination that the owner must offer Cardo a renewal lease at a rent based on the preferred rent of $140 per month, which it is undisputed was the monthly rent paid by Cardo on the base date of October 31, 1996, was neither arbitrary nor capricious (*see Gilman, supra*). Concur—Nardelli, J.P., Tom, Ellerin, Williams and Lerner, JJ.