OPINION OF THE COURT
Memorandum.
Order affirmed without costs.
The primary issues in this nonpayment proceeding concern the proper interpretation of the parties’ preferential rent rider and the effect on the parties’ agreement of the 2003 amendment (L 2003, ch 82, § 6) to the Rent Stabilization Law of 1969 permitting an owner to discontinue a preferential rent upon a renewal or a vacancy lease. This amendment requires that the Rent Stabilization Code provide, inter alia,
“that where the amount of rent charged to and paid by the tenant is less than the legal regulated rent for the housing accommodation, the amount of rent for such housing accommodation which may be charged upon renewal or upon vacancy thereof may, at the option of the owner, be based upon such previously established legal regulated rent, as adjusted by the most recent applicable guidelines increases and any other increases authorized by law.”
Tenant moved into the subject apartment on January 1, 1995 pursuant to a lease executed by a receiver as landlord. The lease stated that tenant’s monthly rent would be $535 and did not state that this amount was a preferential rent, nor was a preferential rent rider attached to the lease. On November 1, 1995, tenant and the receiver executed a one-year renewal lease at a rental of $545.70, which included an authorized guideline increase of $10.70 per month. The renewal form did not state that the renewal rent was a preferential rent and, again, no preferential rent rider was attached to the renewal form. The record is silent as to the contents of the rent registrations, if any, during the first two years of tenant’s occupancy.
Beginning with tenant’s November 1996 renewal, all of tenant’s renewal leases contained preferential rent riders. These riders set forth the amount of the purported legal regulated *111 rent (the 1996 lease states that this is $860.46) and provided that “during the term of the tenant’s occupancy,” tenant would be charged a preferential rent. Each rent rider then set forth the amount of the preferential rent “for the term of this Renewal Lease.” Each rider stated that the preferential rent was personal to tenant and would not inure to her successors or assigns. Paragraph (4) of the riders stated that the rent
“for the term of this renewal lease and any renewal leases which the tenant may enter into shall be the preferential rent set forth herein, subject to adjustment in accordance with the Rent Stabilization law [sic], applicable orders of the Rent Guidelines Board . . . and any other adjustment which may be authorized by a court or agency with appropriate jurisdiction.”
The 1996 rider also stated that it was acknowledged that the preference “is granted to the Tenant in exchange for the Tenant’s acceptance of the Owner’s offer as a result of the receiver . . . renting to the Tenant at below market rent.” In the subsequent riders, the acknowledgment was changed to state that the “preference is granted to the Tenant in exchange for the Tenant’s acceptance of the Owner’s offer due to a temporary rent decrease in the market.” The last rider was executed on April 25, 2003, prior to the June 20, 2003 effective date of the 2003 amendment. By letter dated March 10, 2005, landlords advised tenant that they were discontinuing the preferential rent, claiming that this was their right under the 2003 amendment, and they offered to renew tenant’s lease at the claimed legal regulated rent of $1,041.83 for a one-year lease, or $1,072.02 for a two-year lease. Tenant refused to sign the 2005 renewal and continued to pay rent at the rate of her last preferential rent. Thereafter, landlords commenced this nonpayment proceeding, seeking the difference between what tenant had paid and the legal regulated rent for a one-year renewal lease.*
On motions by both sides for summary judgment, the Housing Court awarded summary judgment to tenant. The court reasoned that the language in the preferential rent riders providing that tenant would be charged a preferential rent “dur *112 ing the term of the Tenant’s occupancy,” was unambiguous and meant that tenant would be entitled to a preferential rent, for the duration of her tenancy, and that, even if an ambiguity existed, the ambiguity had to be resolved in favor of tenant.
We agree with the Housing Court’s conclusion. As the Housing Court correctly recognized, the determinative .language is the covenant in paragraph 2 of the preferential rent rider that “the parties to this Renewal Lease agree and. acknowledge that the Tenant will be charged, during the term of. the Tenant’s occupancy, a preferential rent” (emphasis added). Reading the rider as a whole, it is clear that this language means that tenant would enjoy the benefit of a preferential.rent for the entire term of her tenancy. Any doubt as to the proper interpretation of the foregoing language is dispelled by the further languáge "of the rider providing that" the preferential rent is personal to the tenant and does not inure to her successors, and by paragraph (4) of the rider, which, as noted, states that the “Tenant’s rent for the term of this Renewal Lease and any renewal leases which the Tenant may enter into shall he the preferential rent set forth herein, subject to adjustment in accordance with the Rent Stabilization law [szc]” (emphasis added). Thus, it is cleár that the parties agreed that the preferential rent would endure for the life of the tenancy, notwithstanding the language in the riders indicating that the preference was granted due to a temporary decrease in market rents and that the preferential rent was subject to adjustment in accordance with the Rent Stabilization Law (see United W., LLC v Margulies, 16 Misc 3d 132[A], 2007 NY Slip Op 51432[U] [App Term, 1st Dept 2007], affg 12 Misc 3d 1159[A], 2006 NY Slip Op 50971[U] [Civ Ct, NY County 2006]; Matter of Romero v New York State Div. of Hous. & Community Renewal, 16 Misc 3d 484 [Sup Ct, NY County 2007]).
It is true, as landlords contend, that in Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal (283 AD2d 284 [1st Dept 2001]), the court ruled that, where a lease recited that a rent concession was given because of depressed market conditions, the landlord was not required to continue the concession in renewal leases. However, the Missionary Sisters case is distinguishable in that the lease therein did not contain an agreement that the tenant would have a preferential rent for the life of the tenancy. Rather, the agreement limited the preferential rent to the term of the lease. Here, as noted, there was an agreement that the preferential rent would endure for the life of the “occupancy.”
*113 Tenant correctly contends, and the Housing Court correctly concluded, that where, as here, the parties have agreed that a preferential rent would last for the life of the tenancy, the 2003 amendment was not intended to and does not abrogate the agreement of the parties (see Aijaz v Hillside Place, LLC, 8 Misc 3d 73 [App Term, 2d & 11th Jud Dists 2005], affd in part and read in part on other grounds 37 AD3d 501 [2007]; Colonnade Mgt., LLC v Warner, 11 Misc 3d 52 [App Term, 1st Dept 2006]). We therefore affirm the Housing Court’s order granting tenant’s motion for summary judgment dismissing the petition. In view of this conclusion, we do not reach the other issues which may be presented by the facts of this case, including the question of the effect of tenant’s first two leases, which did not indicate that the rents stated therein were preferential rents, and the question whether those leases, which were in effect before the four-year period, may properly be examined (see generally Rent Stabilization Code [9 NYCRR] § 2521.2 [b] [2]; Matter of Sugihara v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 13 Misc 3d 1239[A], 2006 NY Slip Op 52186[U] [Sup Ct, NY County 2006]).
Weston Patterson, J.P, Golia and Belen, JJ., concur.

 Landlords state in their brief on appeal that they deemed the lease renewed at the legal regulated rent for a one-year renewal pursuant to Rent Stabilization Code (9 NYCRR) § 2523.5 (c) (2). As tenant has not raised any issue with respect thereto, we do not pass on the validity, assuming that landlords were otherwise within their rights in discontinuing the preferential rent, of this “deemed” lease renewal.