*659 OPINION OF THE COURT
Joseph E. Capella, J.
In this nonpayment proceeding, the petitioner moves to strike the respondents’ first and second affirmative defenses (CPLR 3211 [b]),[1] and the respondents cross-move for summary judgment (CPLR 3212) based on these same defenses, and their counterclaim for overcharge and legal fees. The court will first address the respondents’ second affirmative defense, which alleges that the “[Respondent Joseph Strasser has been a tenant of the subject premises since on or about July 1, 1992 . . . [and the] premises were never vacated with a legal rent in excess of $2,000.00, and therefore, the subject premises remains [sic] rent stabilized.” According to the petition, however, “the apartment is exempt from . . . Rent Stabilization . . . because the rent is $2,000.00 or more and apartment [sic] is deregulated.”
It is undisputed that, on May 17, 2001, the petitioner and Strasser entered into a two-year (i.e., July 1, 2001 through June 30, 2003) rent-stabilized lease with a monthly rental of $2,174.27. It is also undisputed that, on October 2, 2002, Strasser and the petitioner entered into a new five-year (i.e., July 1, 2003 through June 30, 2008) lease which included Tuohey as a cotenant, at a monthly rental of $2,200. This new lease specifically states that the apartment is not subject to rent stabilization. The facts surrounding the execution of this new lease are highly disputed; however, there is no dispute that Strasser knew that it was an unregulated lease, and he was in full agreement to adding Tuohey as a cotenant. According to the petitioner, the addition of Tuohey as a cotenant to the lease permitted it to take a lawful vacancy increase on the rent, which then qualified the apartment for luxury deregulation because the new lease had a monthly rental exceeding $2,000.
Luxury decontrol under the Rent Regulation Reform Act of 1997 provides for the deregulation of certain vacant rent-stabilized apartments with a legal regulated rent of $2,000 or more per month on or after June 19, 1997. (9 NYCRR 2531.1.) Alternatively, it also provides for the deregulation of high-rental apartments occupied by high-income tenant(s), but only after the filing of a luxury deregulation petition with the Division of Housing and Community Renewal (DHCR) by an owner, and a *660 subsequent order from DHCR granting same. (9 NYCRR 2531.3.) The owner’s petition must not only establish that the apartment’s legal regulated rent is $2,000 or more per month, it must also establish that the apartment is occupied by tenant(s) whose household income exceeds $175,000 in each of the two successive years prior to the filing of the petition. (Id.) Even assuming that these facts do exist, the petitioner must still await a DHCR deregulation order.
Rent stabilization defines a vacancy lease as the first lease entered into between an owner and tenant (9 NYCRR 2520.6 [g]), and defines a renewal lease as the extension of a tenant’s lawful occupancy (9 NYCRR 2520.6 [h]). Generally, when the original tenant vacates, an owner can take a vacancy increase on the new tenant’s lease (i.e., vacancy lease); however, there are instances in which a vacancy increase may be taken when there is no vacatur by the original tenant. For example, under the rules of succession, a qualified family member (9 NYCRR 2520.6 [o]) has the right to a rent-stabilized renewal lease when the tenant dies or permanently vacates (9 NYCRR 2523.5 [b]). And under the Rent Regulation Reform Act of 1997, upon vacatur of the succeeding family member, an owner may charge a vacancy increase to the next family member entitled to succeed to the lease. (9 NYCRR 2522.8 [b].) In other words, the right of a family member to receive a renewal lease without being required to pay the owner a vacancy increase is limited to the first family member. (Id.) Besides succession, the petitioner has provided proof that DHCR permits an owner to take a vacancy increase when a new tenant, who is not a family member, is added to the lease. (DHCR Administrative Review Order Nos. 13169-L [Nov. 28, 1988], 13162-K [Oct. 26, 1988].[2]) It is clear from the aforementioned that a vacancy increase may be permissible even when there is no hiatus in the tenant of record’s occupancy; however, this increase, in and of itself, does not remove the apartment from rent stabilization. Quite the contrary, where there is no hiatus in possession or actual physical vacancy of the premises by the original tenant, vacancy decontrol cannot apply. (Matter of Ghignone v Joy, 55 NY2d 853 [1982]; Matter of Hoy v State of N.Y. Div. of Hous. & Community Renewal, 233 AD2d 120 [1st Dept 1996].) Under these circumstances, luxury deregulation is only permissible when DHCR is *661 sues such an order in response to an owner filing a petition seeking same. (9 NYCRR 2531.3.) There is no dispute that the petitioner did not obtain such an order from DHCR.
It is well settled that parties cannot enter into an agreement that compromises the integrity and enforcement of the Rent Stabilization Code (9 NYCRR 2520.13). And any agreement in purported or actual settlement of a landlord-tenant dispute which waives the benefits of rent stabilization is not merely voidable, but void and unenforceable as a matter of public policy, regardless of whom the agreement benefits. (Riverside Syndicate, Inc. v Munroe, 10 NY3d 18 [2008]; Drucker v Mauro, 30 AD3d 37 [1st Dept 2006].) To permit parties to enter into an agreement that prematurely subjects a rent-stabilized apartment to luxury decontrol on the premise that the negotiated lease represents a fair settlement would not only circumvent, but severely compromise and eventually eviscerate the viability of and the protection intended by the entire Rent Stabilization Code. (Riverside Syndicate, Inc. v Munroe, 10 NY3d 18 [2008], supra; Drucker v Mauro, 30 AD3d 37 [2006], supra.) The new lease agreement entered into by the parties herein essentially bypassed the express statutory language regarding luxury decontrol procedures under the Rent Stabilization Code, and, as a result, prematurely removed the subject apartment from rent stabilization.
Based on the aforementioned, the court finds that the new lease agreement is void. The respondents’ cross motion for summary judgment and dismissal based upon their second affirmative defense is granted, and the petitioner’s motion is denied as moot. There still remains the respondents’ counterclaims for legal fees and overcharge.[3] The mere dismissal of this proceeding alone is not the central relief obtained by the respondents that warrants their entitlement to prevailing party status. (Miller & Seltzer v Ruskin, NYLJ, Dec. 11, 1991, at 21, col 1 [App Term, 1st Dept].) The respondents are the prevailing parties because they have successfully convinced this court that the new lease is void and the subject apartment is still rent stabilized. (Scotia Assoc. v Bond, 126 Misc 2d 885 [Civ Ct, NY County 1985].) Yet it is the existence of a valid lease clause authorizing the recovery of attorney’s fees that will entitle the respondents to same under section 234 of the Real Property *662 Law. (Duett v Cunniff, NYLJ, Mar. 1, 1996, at 25, col 3 [App Term, 1st Dept].)
The respondent, Strasser, should have received a renewal lease on the same terms and conditions, plus any permissible increases, as the original May 17, 2001-expired lease. (9 NYCRR 2522.5 [g]; Matter of Century Operating Corp. v Popolizio, 60 NY2d 483 [1983]; East Eleventh St. Assoc. v Breslow, NYLJ, Oct. 22, 1997, at 28, col 5 [App Term, 1st Dept].) Although the petitioner used the same standard lease form for both leases, as already noted, the new lease was for five years with Tuohey as a cotenant, a monthly rental of $2,200, and a clause stating that the apartment is not subject to rent stabilization. Whereas the new lease, which is void and did not provide for the severability of its clauses, included a legal fees clause, the original lease did not. As a matter of fact, the petitioner and Strasser specifically redacted the legal fees clause from the original lease. Therefore, despite having prevailed, without a valid legal fees clause, the respondents are not entitled to seek reasonable attorney’s fees. (Real Property Law § 234; East Eleventh St. Assoc. v Breslow, NYLJ, Oct. 22, 1997.) As for the proper legal regulated rent and overcharge, if any, the court is unable to determine same from the papers alone.

. The petitioner’s motion does not cite the specific provision of the CPLR pursuant to which dismissal is sought. Since the petitioner has alleged that the first and second affirmative defenses lack merit, the court will deem that said motion is made pursuant to CPLR 3211 (b).

. The DHCR Administrative Review Orders were cited in the petitioner’s moving papers, and copies of same were submitted to the court after oral argument.

. As an incident to the overcharge counterclaim, the respondents also seek a determination of the proper legal regulated rent.