Matter of Pearl v New York State Unified Ct. Sys. (2025 NY Slip Op 06612)

Matter of Pearl v New York State Unified Ct. Sys.

2025 NY Slip Op 06612

Decided on November 26, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 26, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
DEBORAH A. DOWLING
LAURENCE L. LOVE
DONNA-MARIE E. GOLIA, JJ.

2023-11133
 (Index No. 63737/23)

[*1]In the Matter of Dave Pearl, petitioner, 
v
New York State Unified Court System, respondent.

O'Rourke & Degen, PLLC, New York, NY (Ronald D. Degen and Yaoyu Liu of counsel), for petitioner.
David Nocenti, New York, NY (Michael J. Siudzinski and Niaa Daniels of counsel), for respondent.

DECISION & JUDGMENT
Proceeding pursuant to CPLR article 78 to review a revised determination of the New York State Unified Court System dated March 15, 2023. The revised determination adopted the findings and recommendation of a hearing officer dated June 6, 2022, made after a hearing, that the petitioner was guilty of certain charges of misconduct, and terminated the petitioner's employment as a court officer.
ADJUDGED that the petition is granted, on the law, without costs or disbursements, the revised determination is annulled, and the matter is remitted to the New York State Unified Court System for a new determination before a hearing officer in accordance herewith.
The petitioner was employed as a court officer by the respondent, New York State Unified Court System (hereinafter UCS), for approximately 21 years until his employment was terminated on June 23, 2022. On November 1, 2021, the petitioner was served with a notice and specification of charges, alleging that he had engaged in specified acts of misconduct when he used biased and discriminatory language in three Facebook comments. The petitioner denied the charges.
At a hearing conducted in the spring of 2022, the petitioner and several other UCS employees testified. At the conclusion of the hearing, by report and recommendation dated June 6, 2022, a hearing officer found the petitioner guilty of each specified act of misconduct and recommended that the petitioner be terminated from his employment. In a determination dated June 23, 2022, Deputy Chief Administrative Judge Norman St. George adopted the hearing officer's findings and recommendation, found the petitioner guilty of the specified misconduct, and terminated the petitioner's employment. Thereafter, in a revised determination dated March 15, 2023, Deputy Chief Administrative Judge Norman St. George adopted the hearing officer's findings and recommendation, found the petitioner guilty of the specified misconduct, and terminated the petitioner's employment. The petitioner commenced this CPLR article 78 proceeding to review the revised determination. The proceeding was transferred to this Court pursuant to CPLR 7804(g).
"Generally, judicial review by this Court of a determination rendered by an administrative body following a hearing is limited to whether it is supported by 'substantial [*2]evidence'" (Matter of Lozada v Elmont Hook & Ladder Co. No. 1, 151 AD3d 860, 861, quoting Matter of Alegre Deli v New York State Liq. Auth., 298 AD2d 581, 582; see CPLR 7803[4]). However, where the issue is whether an agency complied with its own internal procedures, the appropriate standard of review is whether the determination was "made in violation of lawful procedure" (CPLR 7803[3]; see Matter of Blaize v Klein, 68 AD3d 759, 761). "It is a 'fundamental administrative law principle that an agency's rules and regulations promulgated pursuant to statutory authority are binding upon it as well as the individuals affected by the rule or regulation'" (Matter of Blaize v Klein, 68 AD3d at 761, quoting Matter of Lehman v Board of Educ. of City School Dist. of City of N.Y., 82 AD2d 832, 834). An administrative decision made in violation of that principle "requires reversal, on the law, 'even though there is in the record substantial evidence to support the determination made'" (Matter of Lipani v New York State Div. of Human Rights, 56 AD3d 560, 561, quoting Matter of Charles A. Field Delivery Serv. [Roberts], 66 NY2d 516, 520).
Contrary to the petitioner's contention, the revised determination did not violate his First Amendment right to free speech, as UCS met its burden of establishing that discipline arising out of the petitioner's protected activity was justified (see Matter of Santer v Board of Educ. of E. Meadow Union Free Sch. Dist., 23 NY3d 251, 263-265).
However, the petitioner also contends that one of the three specified acts of misconduct was time-barred. Section 24.5 of the collective bargaining agreement (hereinafter the CBA) between UCS and the petitioner's union provides, in relevant part, that "no removal, disciplinary proceeding or alternative disciplinary procedure shall be commenced more than 18 months after the occurrence of the alleged incompetency or misconduct complained of and described in the charges." It is undisputed that one of the petitioner's complained of Facebook comments was posted at least four years prior to the date that the petitioner was served with the notice and specification of charges. However, the hearing officer concluded that the comment constituted a continuing violation of UCS's policies because it continued to exist and was readily discoverable.
We note that at the conclusion of testimony on March 16, 2022, the hearing officer granted UCS's application to dismiss one of the specified acts of misconduct as time-barred based on the 18-month statute of limitations specified in section 24.5 of the CBA. However, upon continuation of the hearing on April 6, 2022, the hearing officer reinstated that specified act of misconduct on the ground that he had lacked the authority to dismiss it.
Our dissenting colleague correctly highlights that an administrative agency's interpretation of contract terms will be set aside where it "is without sound basis in reason, and in disregard of the terms of the contract" (Matter of Century Operating Corp. v Popolizio, 60 NY2d 483, 488; see Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 326). Here, although the subject Facebook comment remained available to view more than four years after it was posted, and indeed once a statement is published on the internet, it may be permanently available, to follow the rationale of the hearing officer and our dissenting colleague would render the contractual statute of limitations meaningless.
Contrary to the contentions of UCS and our dissenting colleague, the statute of limitations applicable to the disciplinary proceeding must be analyzed in an identical manner to that of the publication of an allegedly defamatory statement. It is well established that "the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine . . . is, in legal effect, one publication which gives rise to one cause of action and that the applicable [s]tatute of [l]imitation[s] runs from the date of that publication" (Gregoire v Putnam's Sons, 298 NY 119, 123). This "single publication rule" applies to publications made on the internet (Firth v State of New York, 98 NY2d 365, 370). In Firth, the Court of Appeals specifically rejected the plaintiff's contention that "because a Web site may be altered at any time by its publisher or owner and because publications on the Internet are available only to those who seek them, each 'hit' or viewing of the report should be considered a new publication that retriggers the statute of limitations" (id. at 369). Here, as in libel actions, the statute of limitations must be measured from the initial date of publication. That a comment is published continuously on a website does not serve to restart the applicable statute of limitations (see D'Arata v New York Post, 226 AD3d 560). For these purposes, [*3]social media is viewed no differently than any other website (see Nelson v Ardrey, 231 AD3d 179, 184-185). Accordingly, the hearing officer should not have considered the time-barred specification.
As the hearing officer's report recommending the petitioner's termination and the revised determination adopting its findings and recommendation do not distinguish between the appropriate sanction for the time-barred specified act of misconduct and the appropriate sanction for the remaining two specified acts of misconduct, we remit the matter to UCS for a new determination before a hearing officer based solely on the remaining two specified acts of misconduct.
In light of our determination, the petitioner's remaining contentions need not be reached.
DILLON, J.P., LOVE and GOLIA, JJ., concur.
DOWLING, J., dissents, and votes to confirm the revised determination, deny the petition, and dismiss the proceeding on the merits, with the following memorandum:
In my view, the revised determination finding the petitioner guilty of misconduct and terminating his employment as a court officer should be confirmed.
I do not agree with the conclusion of my colleagues in the majority that the specified act of misconduct relating to the petitioner's Facebook comment, which was first published more than four years before the petitioner was served with the notice and specification of charges, was time-barred. The notice and specification of charges served upon the petitioner in November 2021 alleged, among other things, that the petitioner had made a comment on Facebook about certain refugees that violated Rules of the Chief Judge (22 NYCRR) part 50 contained in the New York State Unified Court System Employee Handbook. Section 50.1 of that part provides that "[c]ourt employees must observe and maintain high standards of ethical conduct in the performance of their duties in order to inspire public confidence and trust in the fairness and independence of the courts," and that "[c]ourt employees shall not discriminate, and shall not manifest by words or conduct[,] bias or prejudice on the basis of race, color, sex, . . . [or] national origin" (id. § 50.1[II][C]). The notice and specification of charges further alleged that the subject Facebook comment demonstrated "an inability to be impartial and to treat individuals fairly," which negatively impacted the respondent's "good order and ability to dispense justice fairly and impartially." Moreover, article 24.5 of the collective bargaining agreement (hereinafter the CBA) between the petitioner's union and the respondent states that "no removal, disciplinary proceeding or alternative disciplinary procedure shall be commenced more than 18 months after the occurrence of the alleged incompetency or misconduct complained of."
After a hearing was conducted pursuant to the terms of the CBA, the hearing officer reported recommended findings of fact, conclusions of law, and a proposed disposition that the petitioner be terminated from his employment. Among the hearing officer's findings was that, although the petitioner's Facebook comment about certain refugees was first posted approximately four years before the notice and specification of charges were served, the specific act of misconduct relating to this comment was not time-barred under article 24.5 of the CBA because "the fact that the comment continued to exist and was readily discoverable on Facebook despite being made over 4 years ago gives rise to the inference of a continuing violation" of the respondent's anti-bias policy. In March 2023, Deputy Chief Administrative Judge Norman St. George adopted the findings and recommendations of the hearing officer and terminated the petitioner's employment as a court officer.
"'In reviewing an administrative agency determination, [courts] must ascertain whether there is a rational basis for the action in question or whether it is arbitrary and capricious'" (Matter of Peckham v Calogero, 12 NY3d 424, 431, quoting Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144, 149). "'Arbitrary action is without sound basis in reason and is generally taken without regard to the facts'" (Matter of Aponte v Olatoye, 30 NY3d 693, 698, quoting Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of [*4]Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231). "'[C]ourts must defer to an administrative agency's rational interpretation of its own regulations in its area of expertise'" (id., quoting Matter of Peckham v Calogero, 12 NY3d at 431). Moreover, an administrative agency's interpretation of contract terms will be set aside where it "is without sound basis in reason, and in disregard of the terms of the contract" (Matter of Century Operating Corp. v Popolizio, 60 NY2d 483, 488; see Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 326). "If the court finds that the determination is supported by a rational basis, it must sustain the determination even if the court concludes that it would have reached a different result than the one reached by the agency" (Matter of 88-05 171, LLC v New York State Div. of Hous. & Community Renewal, 230 AD3d 679, 680 [internal quotation marks omitted]).
Here, the respondent's interpretation of article 24.5 of the CBA was not without sound basis in reason or in disregard of the CBA's terms. Rather, article 24.5 of the CBA was rationally interpreted, along with the Rules of the Chief Judge that the petitioner was alleged to have violated, to find that the misconduct relating to the Facebook comment about certain refugees, i.e., that the petitioner exhibited bias which negatively impacted the respondent, occurred within the requisite time period (see Matter of Aponte v Olatoye, 30 NY3d at 698; Matter of Century Operating Corp. v Popolizio, 60 NY2d at 488). The majority's indiscriminate application of the "single publication rule" used in defamation actions to this proceeding fails to give the required deference to the respondent's interpretation of the CBA and the Rules of the Chief Judge.
Further, the vile statements contained in the petitioner's three Facebook comments constituted a basis to support the charges of misconduct. Every litigant in New York is entitled to enter our State's courthouses to seek justice, free from any taint or stain of bias from any employee. Therefore, I respectfully dissent, and vote to confirm the revised determination finding the petitioner guilty of misconduct and terminating his employment as a court officer.
ENTER:
Darrell M. Joseph
Clerk of the Court