*489 OPINION OF THE COURT
Ruben A. Martino, J.
Petitioner commenced this summary residential holdover proceeding for a judgment of eviction against tenant based on his failure to sign a renewal lease.
Respondent Harlan B. Hill is a rent-stabilized tenant and resides at 10 West 135th Street, apartment 5-C, New York, New York 10037. A renewal lease dated March 25, 2005 was offered to respondent. This renewal lease, however, contained two separate renewal notices on two separate Division of Housing and Community Renewal (DHCR) forms. One form contained the rent for the living area, while the other form was for parking. Both forms contain the same terms and look the same except one contains the amount for parking and the other contains the amount for the living space. All previous renewal lease forms were one sheet long and contained the rent amount for both parking and the living space on the same form. The amount that respondent would pay is exactly the same as it would have been had both rents been placed on one renewal form. Petitioner’s reasoning for separating the leases is to make billing and bookkeeping easier. Respondent refused to sign the renewal leases and his current lease expired on August 25, 2005. As a result, petitioner commenced this holdover proceeding against respondent.
The question the court must answer is whether petitioner, in offering two renewal lease forms that separated the rent amount for parking and the living space, when in the past one renewal lease was offered to respondent containing the rent for both spaces, violated Rent Stabilization Code (RSC) (9 NYCRR) § 2522.5 (g).
RSC § 2522.5 (g) (1) states that
“[t]he lease provided to the tenant by the owner pursuant to subdivision (b) of this section shall be on the same terms and conditions as the expired lease, except where the owner can demonstrate that the change is necessary in order to comply with a specific requirement of law or regulation applicable to the building or to leases for housing accommodations subject to the RSL, or with the approval of the DHCR.”
Petitioner argues that the terms and conditions of the lease are the same as in the past. Although the form of the renewal lease has changed, the function has remained exactly the same. *490 The Rent Stabilization Code, it argues, is based upon principles of property and contract law where parties are allowed to be flexible so that the parties can develop their own course. Therefore, having two renewal leases instead of one does not go against RSC § 2522.5 (g).
However, under the rent stabilization laws, leases are not treated exactly as a private lease between individuals. The Rent Stabilization Law of 1969 (Administrative Code of City of NY § 26-501 et seq.) and the Rent Stabilization Code impose very specific requirements regarding the leasing of apartments (390 W. End Assoc. v Harel, 298 AD2d 11, 14 [1st Dept 2002]). They do not view leases in this context as a regular leasing agreement where parties can give up certain rights and requirements that are mandated under the Rent Stabilization Code (Cvetichanin v Trapezoid Land Co., 180 AD2d 503, 504 [1st Dept 1992]). Rental amounts are set and there are many guidelines that the parties must abide by. Unlike a regular property or contract arrangement where parties can negotiate for terms that may be beneficial, the rent stabilization laws change things. For example, in Cvetichanin v Trapezoid Land Co. (180 AD2d 503, 504 [1st Dept 1992]), where the tenant and landlord agreed to a lease that included a settlement agreement that violated the Rent Stabilization Code, the Court found that the purpose of the code was not only to ensure the protection of the tenant but to protect tenancies in general. In the end, a landlord and tenant cannot make an agreement, even if favorable to the tenant, that goes against the scheme of rent regulation. Hence, petitioner’s argument that there is flexibility within contractual and rental rights that should apply in this case with the change to two leases fails to acknowledge that rent-stabilized leases have been differentiated from other contractual and proprietary agreements.
Petitioner has not offered a renewal lease on the same terms and conditions as the expiring lease. In an administrative decision by DHCR, Anonymous v Anonymous (NY, Feb. 10, 2003, No. QG210013R0), petitioner refused to include in the renewal lease, renewal for the garage space. Although agreeing that both the garage and the living space are subject to rent stabilization, petitioner argued that since he no longer owned the garage space, which was sold to a third party, he could not include it on the lease, and the tenant must make payments directly to that third person. The Commissioner found that since under RSC § 2520.6 (r) (3) a garage space is an ancillary service (a space or *491 service not contained in the individual housing accommodation but was provided by the owner), the owner was required to maintain those services. He also found that, under RSC § 2520.6 (r) (4) (xi), if at the beginning of the tenancy there was a separate charge for the ancillary service and there was a common ownership of the service between the operator and the owner, then rent or payment of the service had to conform to the rent guidelines. Since the tenant rented the garage from the owner and the garage space rent was included in the lease for the apartment, then the owner could not separate the rent for the garage from the lease for the apartment. This would change the terms and conditions of the original lease.
Although this is an administrative decision by DHCR, “courts should defer to the interpretation given a statute by the agency charged with its enforcement if the interpretation is neither irrational, unreasonable, nor inconsistent with the governing statute” (Matter of Great Lakes-Dunbar-Rochester v State Tax Commn., 65 NY2d 339, 343 [1985]). Petitioner’s argument that the renewal lease, although separating the rental amounts for the parking and the apartment, does not change the overall payment and just presents respondent with the two documents is irrelevant. The original lease contained the rental amount for the parking space and apartment. The same principles in the DHCR decision can apply here, even though the facts were slightly different. As in the DHCR administrative decision, although there would be no real burden on the tenants by presenting two lease documents, and the parking space would still be subject to rent stabilization, the fact is that parking was included in the original lease and thus respondent is entitled to a renewal lease that includes rent for parking.
Lastly, petitioner’s reasoning for changing the lease does not fall under any of the exceptions of RSC § 2522.5 (g). The change to the lease is not needed to comply with a requirement of law, or through the approval of DHCR. In fact, the petitioner’s only reason for the change to the lease is to make billing and bookkeeping easier so it can have separate files for parking and residential space. This is not consistent with RSC § 2522.5 (g). Therefore, petitioner cannot offer two renewal leases separating the rent for parking and for the apartment space.
Accordingly, this proceeding is dismissed.