*558 OPINION OF THE COURT
Marilyn Shafer, J.
In this CPLR article 78 proceeding, the court is called upon to determine whether respondent New York State Division of Housing and Community Renewal (DHCR) erred in interpreting the 2003 amendment to section 26-511 (c) (14) of the Rent Stabilization Law (Administrative Code of City of NY) (the 2003 amendment) as not permitting an owner to eliminate a tenant’s preferential rent upon renewal of her lease, in light of the language of the parties’ preferential rent rider. As discussed below, this court concludes that DHCR rationally determined that the above statutory provision, giving the landlord the option to renew based on either the preferential rent or legal regulated rent, was not intended to obviate the terms of a preferential rent rider to a lease agreement to allow the tenant to pay less.
Background
In 1968, Judit Polyak (tenant) became the tenant of a rent-stabilized apartment located at 218 East 85th Street, apartment 2R, in Manhattan. Petitioner 218 East 85th Street, LLC is the owner and landlord of the premises and Joseph Stribula is the managing agent. Commencing in 1988, and continuing every other year of her tenancy, the landlord gave the tenant a preferential rent rider in addition to her apartment renewal lease, in which the parties agreed that the tenant would pay a lesser rent notwithstanding the legal registered rent.
In October 2005, however, the owner refused to offer the tenant a lease based upon the same terms and conditions as the previous leases, and instead, offered the tenant a renewal lease based upon the legal regulated rent, asserting rights under the 2003 amendment.
On December 21, 2005, the tenant filed a lease renewal complaint with the DHCR. In part III of the DHCR form complaint, entitled “Nature of Complaint,” the tenant checked off box numbered “6,” stating: “The owner refuses to offer me a renewal lease on the same terms and conditions as were contained in my expiring lease. The owner has made changes in the new lease.” The tenant notes that she signed and returned the 2006 preferential rent rider initially offered by the owner along with the renewal lease as she has in years past, but that this time, the owner only signed and returned the renewal lease and he failed to return the 2006 preferential rent rider to tenant. Among the attachments to the complaint was a copy of the *559 2006 preferential rent rider, signed by the tenant in October 2005, but not signed by the owner. The owner responded to the tenant’s complaint by asserting that the legal rent was established and that the tenant signed the lease renewal.
By an order dated August 3, 2006, the Rent Administrator issued an order denying the tenant’s complaint, finding that pursuant to law, the owner has the option of removing the preferential rent and charging the tenant the full legal rent upon renewing the lease.
On or about September 6, 2006, the tenant filed a petition for administrative review (PAR), appealing the Rent Administrator’s August 3, 2006 determination. In support of the PAR, the tenant argued that the clear language of each preferential rent rider throughout the years, coupled with the prior practice and custom between the parties, manifested the intention between the parties and certainly created the expectation of the tenant that the preferential rent would last the life of the tenancy. According to the tenant, nothing in the language of the 2003 amendment permits the owner to disregard the terms of the parties’ preferential rent rider. Finally, the tenant argued that her interpretation of the terms is consistent with the owner’s conduct in issuing and executing the identical preferential rent rider in 2002 and in 2004, one year after the enactment of the 2003 amendment. The tenant submitted leases from 2002 and 2004 which incorporated the same preferential rent rider terms.
In its answer, the owner once again asserted that the 2003 amendment permits the landlord to renew based on the legal regulated rent notwithstanding the existence of years of executing the preferential rent rider. In addition, the owner argued that the particular preferential rent riders at issue do not state that the tenant will be charged a preferential rent for the duration of the tenancy.
On November 1, 2007, DHCR Deputy Commissioner Leslie Torres (the Commissioner) issued an order and opinion granting the tenant’s PAR. The DHCR opinion held that
“a plain reading of the preferential rent rider, which states that ‘[w]hen the tenant moves out, the owner can compute and charge the new rent based on . . . [t]he legal registered rent,’ clearly indicates that the preferential rent was to continue for the duration of the tenancy and does not, as asserted by the owner, constitute a concession for a specific lease term.”
The Commissioner noted that the landlord failed to dispute the *560 tenant’s contention that the preferential rent rider terms have been included in the tenant’s leases since 1988, even after the 2003 amendment in 2004, and noted that the landlord offered a preferential rent rider in 2006 and that the landlord then refused to sign and return a copy of the preferential rent rider to the tenant with the January 2006 renewal lease.
The DHCR relied on section 2522.5 (g) (1) of the Rent Stabilization Code (9 NYCRR), which it characterized as a “significan [t]” requirement that renewal leases be offered “on the same terms and conditions as the expired lease” (Rosario v Diagonal Realty, LLC, 8 NY3d 755, 762 [2007], cert denied 552 US —, 128 S Ct 1069 [2008]). The DHCR ruled that the 2003 amendment of the Rent Stabilization Law does not permit “an owner to terminate a preferential rent” in a situation such as this, where it had “agreed to continue the preferential rent for the duration of the tenancy.”
While the DHCR recognized that its interpretation of the 2003 amendment “represents a departure from rulings rendered by DHCR in prior proceedings involving almost identical fact pattern[s],” the Commissioner explained that after consideration of Matter of Romero v New York State Div. of Hous. & Community Renewal (16 Misc 3d 484 [Sup Ct, NY County 2007]), Matter of Sugihara v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin. (13 Misc 3d 1239[A], 2006 NY Slip Op 52186[U] [Sup Ct, NY County 2006]), and other “recent judicial decisions on this question,” it found the DHCR’s prior decisions to be “incorrect” and its new analysis of the 2003 amendment, in conjunction with the “same terms and conditions requirement” of the Rent Stabilization Code, to be preferable.
In November 2007, the instant article 78 proceeding ensued, whereby petitioner asserts that the DHCR decision was affected by errors of law and an abuse of discretion. Specifically, petitioner argues that DHCR failed to adequately explain the reason for its departure from precedent in construing the 2003 amendment, and even if it had explained this, DHCR’s interpretation of the 2003 amendment is “contrary to the plain language of the statute,” and finally, that the Commissioner misinterpreted the language of the preferential rent rider and that at best the language is ambiguous and requires a hearing to determine the intent of the parties.
This court is limited by CPLR article 78 to the question of whether DHCR’s determination was arbitrary and capricious or *561 without a rational basis in the administrative record (Greystone Mgt. Corp. v Conciliation & Appeals Bd. of City of N.Y., 94 AD2d 614 [1st Dept 1983], affd 62 NY2d 763 [1984]). An action is arbitrary and capricious, or an abuse of discretion, when the action is taken “without sound basis in reason and . . . without regard to the facts” (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). In addition, the court may not substitute its judgment for that of the Commissioner where her decision is rationally based in the record (Matter of Howard-Carol Tenants’ Assn. v New York City Conciliation & Appeals Bd., 64 AD2d 546 [1st Dept 1978], affd 48 NY2d 768 [1979], rearg denied 48 NY2d 1027 [1980]).
Historically, where a landlord was charging a preferential rent, and agreed to charge less than the legal regulated rent that he could lawfully collect (9 NYCRR 2521.2 [a]), the landlord could not then raise the rent to the full legal regulated rent in lease renewals for that tenant and would have to wait until a vacancy and a new tenant enters to collect the full legal regulated rent.
In 2003, as many courts have recognized, this rule was changed by an amendment to the Rent Stabilization Law which permitted a landlord to terminate a preferential rent at the time of lease renewal and charge the legal regulated rent (see Matter of Pastreich v New York State Div. of Hous. & Community Renewal, 50 AD3d 384 [1st Dept 2008]; Matter of Romero v New York State Div. of Hous. & Community Renewal, 16 Misc 3d 484 [2007], supra; Matter of Sugihara v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 13 Misc 3d 1239[A], 2006.NY Slip Op 52186DJ] [2006], supra). The 2003 amendment has been understood in these decisions as a codification of the First Department’s ruling in Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal (283 AD2d 284 [1st Dept 2001]), that where a lease specifically provides that the preferential rent was for a limited term, the landlord is not required to continue the lower rent, but may instead raise the rent upon renewal to the legal regulated rent.
Rent Stabilization Law § 26-511 (c) (14) became effective on June 6, 2003 and provides in pertinent part that
“where the amount of rent charged to and paid by the tenant is less than the legal regulated rent for the housing accommodation, the amount of rent for *562 such housing accommodation which may be charged upon renewal or upon vacancy thereof may, at the option of the owner, be based upon such previously established legal regulated rent, as adjusted by the most recent applicable guidelines increases and any other increases authorized by law” (emphasis added).
While the 2003 amendment permits owners to end a preferential rent and assume charging a legal regulated rent upon a renewal lease, it does not preclude a landlord and tenant from agreeing to a preferential rent for a specific period of time (Colonnade Mgt., LLC v Warner, 11 Misc 3d 52 [App Term, 1st Dept 2006]). In fact, where the original lease or renewal lease provides that the tenant is entitled to further leases at the preferential rent for the duration of the tenancy, the 2003 amendment does not negate that provision (id.; Matter of Romero, 16 Misc 3d at 488-489). “Thus, both before and after the 2003 amendment, the courts [have] held that specific lease terms take precedence over the more general ‘default’ rent stabilization provisions governing renewal lease terms and preferential rents” (764 Madison Ave. LLC v Risse, 17 Misc 3d 330, 334 [Civ Ct, NY County 2007]).
The DHCR interpreted the 2003 amendment to be consistent with section 2522.5 (g) (1) of the Rent Stabilization Code (9 NYCRR) which requires that a renewal lease be offered on the “same terms and conditions” as in the previous lease. This is a very significant requirement of the rent stabilization laws which was recently reaffirmed by our Court of Appeals (Rosario v Diagonal Realty, LLC, 8 NY3d 755 [2007], supra [where the Court found that the rent stabilization requirement to renew leases on the same terms and conditions was not preempted by a federal statute permitting owners not to renew]; Matter of Sugihara v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 13 Misc 3d 1239[A], 2006 NY Slip Op 52186[U] [2006], supra). The DHCR rationally found that benefits given to a rent-stabilized tenant cannot be withdrawn by a subsequent lease except in certain circumstances that do not apply here. Once the landlord has agreed that a tenant will pay preferential rent as was done herein, “[until] the tenant moves out,” the landlord cannot begin charging the legal regulated rent (id.).
In addition, the DHCR explained that it came to its decision to apply the “same terms and conditions” rule to the 2003 *563 amendment after reviewing the many court decisions that contradicted its former position based upon the history of the 2003 amendment (Matter of Romero v New York State Div. of Hous. & Community Renewal, 16 Misc 3d 484 [2007], supra; Matter of Sugihara v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 13 Misc 3d 1239[A], 2006 NY Slip Op 52186[U] [2006], supra).
While petitioner is correct that if DHCR departs from precedent it must explain its change and provide a rational basis for it (Matter of Charles A. Field Delivery Serv. [Roberts], 66 NY2d 516 [1985]), clearly DHCR has done so in its opinion. As noted above, in its opinion, DHCR rationally explained that it changed its policy after considering the importance of interpreting the 2003 amendment to be consistent with the “significan[t]” policy of renewal leases being offered on the “same terms and conditions,” as well as the fact that many recent judicial decisions expressly rejected the DHCR’s interpretation.
Recent case law interpreting the 2003 amendment makes clear that it
“was not intended to obviate the terms of a lease agreement where both the landlord and the tenant are aware that the rent charged could legally be higher, but agree, under a specific set of circumstances, to allow the tenant to pay less, either for a specified period of time or for the duration of the tenancy” (Matter of Pastreich v New York State Div. of Hous. & Community Renewal, 50 AD3d at 386387, citing Matter of Missionary Sisters of Sacred Heart, Ill., 283 AD2d at 287; see also Matter of Romero v New York State Div. of Hous. & Community Renewal, 16 Misc 3d 484 [2007], supra; Matter of Sugihara v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin., 13 Misc 3d 1239[A], 2006 NY Slip Op 52186[U] [2006], supra).
Thus, the issue herein becomes whether it was rational for DHCR to determine that the 2006 preferential rent rider at issue indicates that the preferential rent was to be continued throughout the tenant’s tenancy on the same terms and conditions as was done previously.
The renewal lease relied upon by the tenant was to commence on January 1, 2006 and expire on December 31, 2007. It showed a legal rent of $1,142.06 and a lower rent to be charged of $584.34. The tenant also submitted a copy of a preferential rent *564 rider to that lease, which rider the landlord did not dispute had been included with her leases since 1988, and which provided the following:
“PREFERENTIAL RENT RIDER
“The legal registered rent of $1142.06 for apartment 2R at 218 E. 85th Street is registered with the Division of Housing and Community renewal (DHCR).
“DHCR regulations allow an owner to charge less than the legal rent.

“When the tenant moves out, the owner can compute and charge the new rent based upon the following:

“1) The legal registered rent,
“2) A guidelines increase; plus
“3) A vacancy lease allowance.
“Both the owner and tenant agree that this rider is part of the lease and subject to the DHCR. Hereby both tenant and owner agree to the following concession:
“For the period 01/01/2006 to 12/31/2007 the monthly rent will be $584.34” (emphasis added).
While leases, like other contracts, must be interpreted in accordance with the intent of the parties (Matter of Century Operating Corp. v Popolizio, 60 NY2d 483, 489 [1983]), a rent-stabilized lease must be read in accordance with the Rent Stabilization Law and the Rent Stabilization Code (First Lenox Terrace Assoc. v Hill, 13 Misc 3d 488, 490 [Civ Ct, NY County 2006] ). The purpose of the strict requirements on leasing imposed by the Rent Stabilization Law and the Rent Stabilization Code is to protect the tenant and tenancies (id.). While a tenant may be granted greater rights (Minick v Park, 217 AD2d 489, 490 [1st Dept 1995]), a tenant cannot waive a benefit of the Rent Stabilization Law and any agreement to do so is void (Georgia Props., Inc. v Dalsimer, 39 AD3d 332, 334 [1st Dept 2007] ).
The owner asserts that DHCR’s determination was irrational because the language of the 2006 preferential rent rider indicates that the owner merely offered a limited concession for the lease term. According to the owner, the last sentence of the rider, which states that “[f]or the period 01/01/2006 to 12/31/ 2007 the monthly rent will be $584.34,” limits the duration of the rent preference. However, if the period in which the preferential rent was to be charged was intended to be limited only to *565 a particular period, the lease or the rider could have said so (see Matter of Romero v New York State Div. of Hous. & Community Renewal, 16 Misc 3d 484 [2007], supra). It was rational for the DHCR to find that by specifying that the preference did not apply to the next tenancy, i.e., “[w]hen the tenant moves out,” it did apply to the current tenancy.
Moreover, the DHCR specifically relied upon Rent Stabilization Code (9 NYCRR) § 2522.5 (g) (1) for its decision, which requires a renewal lease to be offered on the same terms and conditions as the expiring lease except where the landlord can demonstrate that the change is necessary in order to comply with a specific requirement of law or regulation applicable to the building or lease or with the approval of the DHCR (Rosario v Diagonal Realty, LLC, 8 NY3d 755 [2007], supra, affg 32 AD3d 739 [1st Dept 2006]; First Lenox Terrace Assoc., 13 Misc 3d at 489-490). Thus, the lease may not seek “to create a new tenancy obligation not expressed in the earlier lease” (East 11th St. Assoc. v Breslow, 174 Misc 2d 994, 995 [App Term, 1st Dept 1997], affd 256 AD2d 110 [1st Dept 1998]).
Finally, the landlord argues that even if the parties’ agreement controls, here, Pastreich requires DHCR to hold a hearing to determine the intent of the parties with respect to the duration of the preferential rent (see Matter of Pastreich v New York State Div. of Hous. & Community Renewal, 50 AD3d 384 [2008], supra). However, the First Department in Pastreich made clear that its finding was based upon the fact that the DHCR irrationally failed to consider the preferential rent rider when making its decision, and that a housing court judge found that an evidentiary hearing was necessary because the preferential rent rider was “open-ended” and could not be “unequivocally ascertained from the four corners of’ the agreement (50 AD3d at 387).
In this case, the opinion reveals that the DHCR rationally reviewed the record, including the terms of the preferential rent rider and petitioner’s actions in offering renewal leases at the preferential rent for years, and found that the parties agreed to give the tenant a right to preferential rent for the duration of the tenancy, until the “tenant moves out” (id. at 386).
Where the intent of the parties can be discerned from the “four corners” of the document, a hearing is unnecessary. Whether to hold a fact-finding hearing is a matter that lays within the DHCR’s discretion (id. at 386). Thus, unlike the “open-ended” preferential rent rider in Pastreich, it was *566 rational for the DHCR to find that “a plain reading of the preferential rent rider” at issue “clearly indicate[d]” an intention for the preferential rent to continue for the “duration of the tenancy.”
Thus, based upon the foregoing, this court finds that DHCR’s interpretation of the 2003 amendment to the Rent Stabilization Law is rational. Petitioner therefore was not entitled to refuse to offer the tenant a rent-stabilized renewal lease on the same terms and conditions as in the previous renewal leases.
Accordingly, it is hereby ordered and adjudged that the petition is denied and the determination of respondent DHCR is affirmed.